# NATHAN AYRES vs. HERVEY H. HAYES.

1. Defendant covenanted with plaintiff to pay him eighteen dollars and fifty cents per acre for a tract of land within *specified boundaries*, supposed to contain two hundred and forty-two acres, *more or less*. Held, that defendant was not bound to pay the specified price per acre for two hundred and forty-two acres, but for the number of acres included in the specified boundaries.

2. A covenant to pay one hundred dollars in *current bank notes or such as pass in Missouri*, may be discharged by paying or tendering that *amount* in such bank notes as were passing in Missouri at the time of payment, without any discount in common transactions of buying and selling: and upon failure to pay the debt when due, the covenantor does not become liable to pay one hundred dollars in gold or silver, but only the specie value of that amount of current bank notes or such as pass in Missouri with the stipulated interest thereon.

3. A bond or note for the payment of a sum of money on a specified future day, *"with eight per cent interest,"* does not bear interest until the debt becomes due.

ERROR TO MARION CIRCUIT COURT.

VANSWEARINGEN for plaintiff in error.

1st. The circuit court erred in refusing to exclude from the consideration of the jury, the covenant introduced in evidence which differs in substance, and essentially from the covenant declared on.

2nd. The court erred in refusing to permit the defendant to prove the admission of the plaintiff, "that he could not make a title to the tract of land sold, even if the defendant paid him the purchase money when due. If on account of want of title—defective title or existing incumbrances—or from any other cause, the plaintiff could not make title, and such fact was admitted by plaintiff to defendant or his agent, the defendant could not be compelled by law to perform the agreement on his part, by payment of the purchase money. 11 Johnson's Reports, page 527; 1 Suyden on Vendors, page 5, top.

3rd. The court erred in rejecting the testimony offered by defendant, to prove a deficiency in the quantity of land sold. The words "more or less" in the covenant are mere words of description, and even if not so regarded, are restrained by that clause of the covenant, under which the land was sold *at* $18 50-100 *hs per acre*. Which last clause of the agreement required the vendor to have the land surveyed after the first payment of purchase money by vendee. Hill vs. Buckley, 17 V. page 391; Man and Tolls vs. Pearson, 2 Johnson Reports, page 37.

4. The court erred in rejecting the testimony offered by defendant to prove who held possession of the land in 1841, subsequent to the time at which the plaintiff was bound by covenant to give the defendant possession; and to prove also, that the plaintiff had failed to comply with the essential part of the covenant, in that he did give defendant possession on the 1st day of April, 1841.

5. The court erred in rejecting testimony to prove the set off, pleaded by the defendant in the cause; which set off, when proved would be regarded as legal payment of portion of the purchase money.

6. The court erred in rejecting testimony offered by defendant, to prove that the plaintiff received the first payment for the land sold, in Kentucky bank paper, without complaint or objection.

7. The court erred in conversing with the jury, about finding their verdict, and by subsequent interference with said verdict.   The court had no legal right to direct the clerk to enter a verdict different in substance or exceeding in amount of damages the verdict rendered by the jury, or to render a judgment not corresponding with the verdict of the jury.   Dunlaps practice vol. 2, page 651.

8. The court erred in giving to the jury the 2nd instruction asked by plaintiff, as there was no evidence tending to show "that the plaintiff was pressed or embarrassed in his circumstances."   This instruction was calculated in the absence of testimony, to establish such fact not only to embarrass the cause, but to mislead the jury, and to divert their minds from the true points in issue.

9. The court erred in giving the 3rd instruction asked by plaintiff, for the same reasons assigned against giving the 2d instruction.

10. There was manifest error in the courts granting the 4th instruction asked by plaintiff. The words in the agreement setting forth the kind of funds in which purchase money was to be paid, call for *current bank notes* or *such as pass in Missouri*.   And yet the court instructed the jury that the defendant was bound to pay to the plaintiff $18 50 per acre for the land sold, in Missouri bank paper or the value thereof.   Farwell &c. vs. Kennett & Co., 7th vol. Mo. Rep. page 595.

11. The court erred in granting the 5th instruction asked by plaintiff, in this: "that the defendant was to take the tract of land at 242 acres, whether it contained "more or less" than that quantity".   This instruction was clearly wrong for reasons stated under the 3rd head.

12. The court erred in giving the 6th instruction asked by plaintiff, in this: that the instalments named in the covenants sued on, should draw interest at the rate of 8 per cent. per annum from date of covenant, if not paid at maturity.   The terms of the covenant clearly show that the instalments referred to were only to bear interest from their maturity, and not from date of the covenant.   See covenant.

13. Before the plaintiff is entitled to sue, or can sue, for an alleged breach of the covenant, he must aver in his declaration a full compliance with the stipulations on his part in the agreement, and make proof thereof.

14. The court erred in refusing the second instruction asked by defendant.   The plaintiff covenanted with the defendant to have a survey of the tract made after payment of the 1st instalment, and also to give a title bond to defendant for the same at that time for the land in question.   These covenants were dependant and should have been complied with on the part of the plaintiff before he could legally require the defendant to pay the second instalment of purchase money.   The survey was indispensable, in order to ascertain the amount of second instalment, as the land was sold at a specified price per acre, and the only object of the survey was to determine the quantity of the land, in which way only could the amount of the 2d instalment be ascertained.   Leigh's nisi prius, vol. 1st, pages 678, 679.

15. The court erred in refusing the third instruction asked by defendant, for the reasons assigned against the refusal of the 2d instructions.

16. The court erred in giving the instruction contained in the record, at its own instance, and without motion from either party.   Farwell vs. Kennett.

## Glover & Campbell for defendant.

1. The legal effect of the covenant, is that the payment may be made in bank notes which pass in Missouri; but the value of the notes offered in payment must equal the value of the number of dollars due for the land; that is, the number of paper dollars offered, must be sufficient to equal in value gold or silver.

The effect of the covenant sued on, is to fix the number of acres in the tract at two hundred and forty-two; and the survey was for other purposes, fixing metes, bounds, &c.

3. The covenant drew interest at eight per cent until paid from date.

4. The failure of Hays to perform his covenant was no bar to his action.

5. That if Hays agreed to allow a premium on specie, in order to collect the whole debt due him, and Ayres did not pay the whole, he was not bound by the agreement.

6. The deed to Ayres was never delivered, and proved nothing if it had been.

7. There is no reasonable objection to the conduct of the court in receiving or entering the verdict.

RYLAND, Judge, delivered the opinion of the court:

Hervey H. Hayes, the defendant in error, brought his action of covenant against Nathan Ayres, the present plaintiff in error, in the Marion circuit court, at the August term thereof, in the year 1846. The defendant below filed his plea of covenants performed, with an agreement by the counsel of both parties, that the defendant might give in evidence, any thing, that he could plead specially in defence.

At the August term of said court in the year 1847, the plaintiff filed his amended declaration, and the defendant then filed his demurrer thereto, which he afterwards withdrew, and filed his "statutory plea" of general issue. The case was regularly continued until August term, 1848, when it was tried, and a verdict was found for the plaintiff below. The defendant then filed his motion to arrest the judgment, which was over-ruled, and excepted to. Also his motion for a new trial, which was like-wise overruled and excepted to.

In order to a proper understanding of the matters in controversy, I have thought it best to insert the material facts of the case, which were given in evidence in the court below.

The following is the evidence in this case as preserved by the bill of exceptions, which is thought any wise material to the decision hereof, by the court. "Article of agreement made this 16th day of September, 1840, between Hervey H. Hayes of the county of Marion, State of Missouri, of the one part, and Nathan Ayres, of the other part, county of Woodford and State of Kentucky, witnesses, that the said Hayes has sold to said Ayres, his farm, now in his possession, in Marion county, and State of Missouri, known as a part of the lower Marion college tract, and bounded as follows: (viz.) beginning at a stake at the north west corner of said farm, on the Hannibal road, and running due south, by the lands of Messrs. Caldwell, Dallas, Heissenger and Dr. Ely, to a sod fence along the land of T. L. Anderson, to Mr. Philemon Hunt's land. Thence north 294 poles to the Hannibal road, thence west about 130 poles to the beginning, supposed to contain two hundred and forty-

two acres, be the same more or less, with all the houses, tenements and appurtenances thereto belonging, and in any wise appertaining: and is to give said Ayres, possession of the above named land, on the 1st day of April, 1841, and if said Ayres should wish to make improvements on the premises in November, and through the winter, he can use one or two of the cottages for his hands to live in, until the 1st of April, above mentioned : and the said Ayres on his part engages to pay to the said Hayes the sum of eighteen dollars and fifty cents per acre for said land, in the following manner, viz : one half of the amount on the 1st day of November next, and the balance on the 1st day of November, 1841, with eight per cent interest. The payments to be made in *current bank notes, or such as pass in Missouri.* The said Hayes agrees to have the land surveyed when the first payment is made, and give his bond for a warrantee deed to said Ayres at that time—on the second payment being made, a general warrantee deed will be required. As witness the contracting parties have hereunto subscribed their hands and seals, the day and date above written.          H. H. HAYES.     [SEAL.]
                                                  NATHAN AYRES.  [SEAL.]
ATTEST, E. RICHMOND.

The defendant then read in evidence two receipts, as follows : "Received of Mr. John W. Ayres, agent for his brother Nathan Ayres, fifteen hundred and eighty-four dollars and forty cents, in part payment for a farm, at the lower college, which I sold to Nathan Ayres last fall, this 9th day of December, 1840.          HERVEY H. HAYES."

"Received of Mr. Nathan Ayres, seven hundred and ten dollars, twenty-two cents principal and interest in full, on the first payment for my farm, which was to be paid for, in two equal payments as specified by our written contract, of which the said Ayres and myself hold copies this 19th Oct., 1841.          H. H. HAYES."

Peter Sowers, was then introduced as a witness, and sworn, he stated some time in February, 1842, Nathan Ayres got from him in Palmyra, two thousand dollars in specie, or what was equal to specie, as it was a check on the bank of Missouri for specie; that Ayres gave him for this check, a check on one of the Kentucky banks, which was worth then as much as Kentucky bank notes, he, Sowers, having sold it for Kentucky paper, at the amount called for on the face of the check; Ayres gave witness a premium of twelve per cent for the two thousand dollars in specie then obtained from him; Kentucky bank paper was received by him at his store at the time, and also in payment of debts in business transactions generally as he believes, but did not know, though when

exchanged for specie or specie funds, the latter commanded a premium of 12 per cent.   Witness also said that the bank paper in circulation in Missouri, was about this time of different relative values in the market as compared with specie.

John M. Ayres then introduced by defendant says he is a brother of defendant, and since this suit was brought, he went to see plaintiff, for the purpose of trying to compromise this suit ; Hayes admitted that Nathan Ayres came to him at a time, when his, Hayes' property was about to be sold, and offered him the specie, if he would make a deduction of twelve per cent; the premium which he, Ayres, had to pay Sowers for specie ; which Hayes agreed to accept, if he Ayres, would pay all that was due him, but Ayres did not pay all, and as his, Hayes' circumstances at that time compelled him to take the specie, he will not now make that allowance.   The time of paying the $2000 alluded to in the foregoing evidence of John M. Ayres, was 11th January, 1842, admitted in court by both parties.   The defendant offered to prove by said witness, John M. Ayres, that at the time he made the first payment to Hayes for the land, that the payment was made in Kentucky paper, and not in specie or specie funds, and that Hayes made no complaint or objection, but received the Kentucky paper.   To this the plaintiff objected—court sustained the objection—defendant excepted to the opinion of the court.   The defendant then offered to prove by John Nichols the quantity of land there is in the tract in controversy, sold to Ayres, by the plaintiff, but the plaintiff objected—court sustained the objection, and defendant excepted.   The defendant then offered to read a deed from Hayes and wife, to Ayres with the certificates thereon ; but plaintiff objected—court sustained the objection, and defendant excepted.   The plaintiff then read in evidence, a letter from Nathan Ayres the defendant, to plaintiff, as follows :

HANNIBAL, Feb. 12th 1842.

Mr. HAYES :—After I saw you yesterday, I was informed that a boat was up the river, and would be here early this morning, and as I had been disappointed in not finding my deed on record, I thought I would get it and have it attended to.   I therefore called on your wife for it, on my way home, but find the deed will not do : in the first place, the sum paid is left blank ; in the next, the deed only specifies the length of one line.   I wish you to execute another deed according to the last survey, which you showed and instead of running to such a fence, I wish it to specify how much of the fence it includes, as you know the improvements were separately considered in our bargain.   I also wish to

specify the sum paid, including what is due, and I hereby pledge myself to attend to that matter as soon as I return, which I hope, will not exceed five weeks; you know this title and deed business has been quite perplexing, and I for one, wish to have all settled, as far as regards my interest. I have sacrificed too much to be put off any longer. Joel Richmond will present this and the deed; and if you please, attend to it forthwith. I think the section, range and township, should be also mentioned, as there are so many contending powers, these days one cannot be too particular.               . Yours,

                                        NATHAN HAYES."

After this letter was read, the deed which the defendant offered to read, was then read without any objection. The defendant offered to prove who had the farm in possession after 1st April, 1841, but the court rejected the evidence on motion, and exception was taken.

This is all the evidence, that is thought in any wise material to the proper decision of this case.

The plaintiff asked the following instructions, which were given by the court, and to which the defendant excepted.

1st. If the plaintiff to induce the defendant to pay him, after the debt was due, agreed with the defendant, without any consideration to accept a part of his debt in discharge of the whole, such agreement is not binding on the plaintiff.

2. If the plaintiff at the time of the payment, by the defendant of the $2000, in Missouri paper, was straightened for money, and the debt of the defendant to the plaintiff was then due, and under the pressure of his circumstances, promised the defendant by way of inducing him to pay said debt, to allow him a premium thereon, this is such oppression upon the plaintiff as makes the promise to allow the premium void. If the debt was due from defendant to the plaintiff, it was the duty of the defendant to pay the debt, without any reward from the plaintiff.

3. And that if the plaintiff did agree with the defendant, to allow him a premium under the circumstances named in the 2d instruction as therein stated upon full payment and the defendant did not and would not pay the balance due, the plaintiff was not bound to allow said premium.

4. The plaintiff moves the court to instruct the jury that the legal effect of the covenant sued on (if they find it to be the act of the defendant) is to bind the defendant, to pay to the plaintiff $18 50-100 per acre for the land named therein in Missouri bank paper or the value thereof.

33

5. That the legal effect of 'said covenant (if made by defendant) is that Ayres was to take the tract of land named therein at 242 acres, whether the same contained more or less than that quantity.

6. That the installments named in the covenant sued on (if they find it was made by Ayres) draw interest at 8 per cent from the date of the covenant, if not paid at maturity.

There is no necessity to notice the instructions asked for and refused on the part of the defendant.

The jury returned into court and said by their foreman.   "We do not understand the instructions given us by the court."   The court then asked the foreman—if the jury wanted any explanations or further instructions?   The foreman answered "yes" "as to the effect of the contract."   The court then without any motion from either party gave the following instruction.

Hays vs. Ayres.  At the request of the jury for further instruction as to the construction of the covenant sued on and given in evidence the court gives the following:

"That the complainant Hayes had a right to demand payment for 242 acres at $18½ per acre in cash, at any time, after the respective days of payment agreed on had expired.   The clause inserted in said covenant allowing the amount to be made in bank paper, was for the benefit of the defendant Ayres, and if he did not avail himself of it at the time, the respective payments became due, he lost it, and Hayes had a right to demand specie.   The court further says, that if Ayres had presented bank paper of the kind mentioned in the contract, on the day said payment became due, Hayes was bound to take them only at their cash value."   This was objected to by defendant and properly saved by bill of exceptions.   The jury then retired and afterwards returned the following verdict.   "We, the jury, find for plaintiff by instructions from the court—damages $470,78 due 1st January 1842, J. D. Dowling, foreman".

The court then ordered the clerk to calculate the interest on the amount found due, from the time, due till the trial at 8 per cent and enter the verdict of the jury in proper form as follows.   "We the jury find for the plaintiff and assess his damages to seven hundred and nineteen dollars and eighty six cents," to which judgment of the court the defendant excepts.   The defendant afterwards moved in arrest of judgment, which motion was overruled.   He also moved for a new trial—which motion was overruled—the defendant excepted to the overruling of both of said motions and brings the case before this court by writ of error.

From the foregoing statement it becomes apparent, that the principal points for adjudication involve the construction of the instrument, sued on as the covenant between the parties.    I will therefore notice this instrument in three of its most important features.

1st.  The quantity and price of the land sold.

2d.  The medium of payment.

3d.  The interest and time of its computation.

These points are involved in the instructions given by the court to the jury and their propriety must be tested by the legitimate construction of the said covenant.

And First.  As to the quantity of the land sold and price.   Let us look to the words of the covenant—"said Hayes has sold to said Ayres his farm now in his possession, in Marion county, State of Missouri, known as a part of the lower Marion college tract, and bounded as follows, (viz.)  Beginning at a stake, at the north west corner of said farm on the Hannibal road, running due south by the lands of Messrs. Caldwell, Dallas, Heissenger and Dr. Ely to a sod fence, thence east, by the fence along the land of T. L. Anderson, to Mr. Philemon Hunt's land.   Thence north 294 poles to Hannibal road, thence west about 130 poles to the 1st mentioned stake on the Hannibal road, supposed to contain two hundred and forty acres be the same more or less, with all the houses, tenements and appurtenances thereunto belonging &c.   And the said Ayres on his part engages to pay to said Hayes the sum of eighteen dollars and fifty cents per acre for said land."   "Said Hayes agrees to have the land surveyed when the first payment is made"   Here is not a selling of a farm or tract of land for a round sum of money—but a tract of land within specified boundaries and the last line of which is not very certain, being "about 130 poles" supposed to contain two hundred and forty acres more or less—now these words "more or less" do not make the exact quantity sold to be so many acres, but their object is to express the intention of the contracting parties to be for the entire land contained within the marked boundaries, whether the quantity shall be more or less than 242 acres.   The "farm" as marked out by the boundaries supposed to contain 242 acres was sold and the words "more or less" were added so that if there be more than the estimated quantity, it was nevertheless sold and if less than the estimated quantity it was still a contract.

Now if this land thus supposed to contain a certain quantity of acres more or less had been sold for a sum of money, say for example for four thousand dollars, without naming any price per acre, and upon ac-

tual survey, it should be found to contain less than the estimated quantity, that could afford no cause of complaint to the purchaser ; for he bought the entire tract for the entire sum—and if he guessed wrong, as to the number of acres, it is his misfortune or his fault.   But in this contract the parties guard against this event, for they mark out the boundaries and they suppose the quantity contained therein, to be so much, more or less—whether more or less, the tract as bounded is the one sold ; and the manner of estimating the amount of the consideration, is per acre.   In my opinion therefore the purchaser Ayres, according to the legal effect of the covenant is not bound to pay for the quantity of 242 acres at all events, at $18 50-100 per acre ; but is bound to pay for the quantity included, in the specified boundaries, whether that quantity be 242 acres or be more or less at the agreed price per acre, and that the plaintiff must rely upon his surveying the land within those boundaries in order to ascertain his demand against the defendant.

The second point.   The medium of payment.   "One half of the amount to be paid on 1st of November next and the balance on the 1st of November eighteen hundred and forty one, with eight per cent interest. *The payments to be made in current bank notes or such as pass in Missouri.*   This covenant was made in September in the year 1840 and the first payment was made on the 1st day of November 1840.   What is the meaning of the words, "current bank notes or such as pass in Missouri?"   What did the contracting parties understand by these words ?   Did they mean gold or silver or notes of the Bank of the State of Missouri.   I suppose there is scarcely a man to be found, who was at all familiar with monetary affairs, at all conversant with pecuniary matters as they were known to exist in 1840, that will answer this last question in the affirmative.   I have no doubt, that the parties understood this contract to be such as permitted Ayres to pay for the land in any bank paper, that was passing at the time in Missouri, without discount in ordinary transactions of life.   In the case of Farwell and als. vs. Kennett and als. 7. Mo. 595, it was stated by this court, to be a principle universally admitted "that the expressions of contracting parties must be taken according to their popular meaning."   It was also admitted that "the courts will judicially take notice in what light, the medium or subject matter of payment of a note or bill is regarded in common understanding."   From the principles laid down and admitted by this court, in the above cited case of Farwell et als. vs. Kennett et als. I come to the conclusion that the medium of payment was adopted in this contract by the parties, "with an express view to prevent a demand

for cash or specie." If this had not been the understanding, such would not have been the terms used. It was easier to write the word "dollars" than to write the words "current bank notes or such as pass in Missouri." The construction, therefore, that I give this covenant, is that Ayres was to pay the amount for the land in current bank notes. If he therefore tendered the amount in such bank notes as were passing in Missouri at the time, without any discount in common transactions of buying and selling, it would have been good. But if he failed to pay the amount due at the time, then he became liable to Hayes for the amount in current bank notes or such as pass in Missouri, the value of which amount of notes, in specie would be the damages to be ascertained by a jury, with the stipulated interest thereon. This case now before the court is not distinguishable in principle from that cited above —but is widely different from the case of Cockrill vs. Kirkpatrick 9 Mo. 697 which needs only to be read to be observed at once.

The third point—the interest and the time of computation. I have considerable doubt upon this point—"one half of the amount (we see it was not yet ascertained ; which shows they did not then count the number of acres at 242) to be paid on 1st November next ; and the balance on 1st November 1841, with eight per cent interest." When was the interest to be computed ? From the date of the covenant ? Or on the amount after maturity ? From the instruction given by the court below to the jury, it seemed to be the impression of that court, that if the amount was paid when due, it bore no interest, but if not paid at maturity, it did bear interest from the date of the covenant. This instruction was wrong, the covenant has no such condition in it. The balance to be paid on the 1st November 1841, was to be with interest from date, or no interest could be counted until after maturity. The interest did not depend upon the payment on the day, or the parties would have said so in their covenant.

I come to the conclusion that the interest should be counted for from the time the money became due, I confess though, I have considerable doubt. My brother Birch, concurring the judgment below will be reversed, and the cause remanded.