## BURKE v. ADAMS, *Appellant.*

1. **Alien**: DESCENT: STATUTE. Under Revised Statutes 1879, section 325, an alien may take real estate by descent from an alien.

2. **Deed, Recording**: WHEN A DELIVERY. A deed with a receipt of the purchase money expressed therein and executed, acknowledged and placed on record by the grantor, is evidence of the latter's intent to pass title to the grantee, and these acts constitute such evidence of a delivery of the deed as to impose the burden upon the grantor and his privies to show, by clear countervailing proof, that a delivery was not intended.

3. **Estoppel in pais**: MINOR. An estoppel *in pais* cannot be asserted against a minor.

4. ——: WHAT NECESSARY TO. Nor can an estoppel *in pais* be invoked where the party sought to be estopped was not apprized of his rights, nor unless the act of the party relied on as an estoppel, was done with the intent that the other party should act upon it, and the lat-

ter was induced thereby to change his relation to the subject matter thereof to his injury.

5. **Statute of Limitations, when it Cannot be Invoked.** The bar of the statute of limitations cannot be invoked where the occupancy relied on to support it, is neither adverse, nor accompanied by any act showing a claim of exclusive ownership.

6. **Conveyance:** FRAUD: EXISTING CREDITORS. A conveyance cannot be claimed to be fraudulent as to existing creditors, except by such creditors.

*Appeal from Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

*E. J. Smith & W. S. Shirk* for appellant.

While an alien may take by descent from a citizen under Revised Statutes, section 325, an alien cannot take by descent from an alien, and thus create a perpetuity in aliens who owe no allegiance here. 2 Blackstone Com., 249, 274; 2 Kent, 53; R. S., § 5564; *Greema v. Greema,* 14 Mo. 526; *Farrer v. Dean,* 24 Mo. 16; *Wacker v. Wacker,* 26 Mo. 426; *State v. Killian,* 51 Mo. 80; *Sullivan v. Burnett,* 105 U. S. 334. Whatever claim plaintiff has under the deed from Wm. H. Burke, he is estopped to set it up against appellant. *Skinner v. Strouse,* 4 Mo. 93; *Newman v. Hook,* 37 Mo. 207; *Rice v. Bunce,* 49 Mo. 231; *Pilkington v. In.. Co.,* 55 Mo. 172. The putting the deed on record by Wm. H. Burke, was not a delivery of it to his brother. 21 Am. Law Reg. 268, 269. Even if the deed was to plaintiff's father, it was made in fraud of creditors of Wm. H. Burke, and was void. R. S., § 2497; *Lillard v. Shannon,* 60 Mo. 522; *Howe v. Waysman,* 12 Mo. 169; 4 Kent Com. 464; *Henderson v. Dickey,* 50 Mo. 161. The action is barred by the statute of limitations, as the deed under which plaintiff claims was made and recorded in 1869; the action having been begun in 1881, and during that time Wm. H. Burke was in possession holding adversely to the deed.

*Rice & Walker* for respondent.

Although neither the respondent nor his father had been naturalized, this does not prevent respondent from inheriting and recovering the land. R. S. 1879, §§ 325, 2168; *Sullivan v. Burnett*, 15 Otto 334; *Rankin v. Patton*, 65 Mo. 413. There was no estoppel in this case against plaintiff; he only became of age July 7th, 1880, and besides, did not know of his rights in regard to the land. *Newman v. Hook*, 37 Mo. 214; *Acton v. Dooley*, 74 Mo. 63; *Lefever v. Lefever*, 30 N. Y. 27; 34 Pa. St. 334; 14 Cal. 368; 6 Hill 16. At the time of making the quit-claim deed by W. H. Burke to DeForrest, even if respondent had been present, which he denies, he was an infant under age, and, therefore, was not estopped. *McBeth v. Trabue*, 69 Mo. 642; *Lowell v. Daniels*, 2 Gray 161; *Schnell v. Chicago*, 38 Ill. 382; *Miles v. Lingerman*, 24 Ind. 385; *Brown v. McCune*, 5 Sanf. 224; Bigelow on Estop., p. 480. There was a sufficient delivery of the deed by W. H. Burke to respondent's father; its filing and recording was a sufficient delivery. *Shaw v. Hayward*, 7 Cush. 170; *Burt v. Cassety*, 12 Ala. 734; *Major v. Hill*, 13 Mo. 247; *Pearce v. Dansforth*, 13 Mo. 360; *Blight v. Schenck*, 10 Pa. St. 285. Besides, the evidence shows that respondent's father had paid a full and valuable consideration for the land, and moved and remained upon the place until his death. *Regan v. Howe*, 121 Mass. 424; *Cannon v. Cannon*, 26 N. J. Eq. 316; *Devorse v. Snider*, 60 Mo. 235. There was no fraud in the case on the part of respondent's father, and even if this was so, it would not affect respondent's title, as this suit was commenced more than ten years after the filing, for record, of the deed alleged to be fraudulent. *Hughes v. Littrell*, 75 Mo. 573; *Rogers v. Brown*, 61 Mo. 187. The bar of the statute of limitations does not apply against respondent; the evidence showing that immediately after the execution of the deed to him, plaintiff's father moved on the land, and remained there until his death, and there being nothing to show that Wm. H. Burke,

although also remaining, claimed adversely to the deed. *Hamilton v. Boggess*, 63 Mo. 233; *Bradley v. West*, 60 Mo. 33. Payment of taxes by Wm. H. Burke was not sufficient to invoke the bar of the statute, unless he claimed adversely. *Bradstreet v. Kinsella*, 76 Mo. 63; *Chapman v. Templeton*, 53 Mo. 463.

PHILIPS, C.—This is an action of ejectment to recover about 114 acres of land in Cooper county. Suit was instituted in September, 1880. The answer pleaded that the land in question belonged to one W. H. Burke, who had a brother named Thomas Burke and a son named Thomas; that his brother was an alien, never having been naturalized, nor having filed any declaration of intention to become a citizen of this country. The plaintiff is the son of Thomas Burke, who was likewise an alien. In 1869 said W. H. Burke executed a deed for said land to Thomas Burke, but the answer alleges that the grantee was the son of the plaintiff and not his brother. That said W. H. Burke filed said deed with the recorder, and had the same recorded in said county. That he afterwards got it from the recorder, and ever kept the same in his possession. That said deed was wholly without consideration, and made to defraud the existing and any future creditors of said W. H. Burke, and especially one Emily Fowler, who claimed a dower interest in part of this land. That said Thomas Burke (the brother) died in 1874. On June 12, 1874, said W. H. Burke, after the death of said brother, appeared before a notary public in the city of Sedalia, and personating Thomas Burke, made and acknowledged a deed for said land to himself, which deed he had recorded in said Cooper county.

In 1876 said W. H. Burke effected a loan on said land with one DeForest, through a loan agent, for the sum of $800, and executed to him a deed of trust thereon to secure the same. The money becoming due in February, 1880, the agent of said DeForest adjusted the matter with said

W. H. Burke, by taking from him a deed of quit-claim to the land in satisfaction of the debt. The answer then alleges that possession of the land was surrendered to said agent, who thereafter placed the defendant in possession as his tenant. It is then averred that the plaintiff was cognizant of and present at the time of the execution of this quit-claim deed, and assented to the arrangement, whereby it is claimed he is estopped. The answer also pleaded the statute of limitations. The reply was a general denial. The cause was submitted to the court sitting as a jury for trial.

The evidence in brief tended to show that plaintiff's father came to this country from Ireland, prior to 1868, and the plaintiff came with him. They thereafter resided continuously in Cooper county, and most of the time lived with said W. H. Burke. They seem to have occupied this farm together. Said Thomas Burke purchased, soon after coming to Missouri, forty acres of land situated in Pettis county, a short distance from the land in controversy, at the expressed consideration of $600. On the 2d of November, 1869, W. H. Burke contracted and deeded to one Gerringer 120 acres of land in Pettis county, including the forty acres he had theretofore conveyed to his brother Thomas. He claims that he included this forty by mistake. The consideration was $2,100. The deed to Thomas's forty was made by Thomas to said Gerringer, but the purchase money therefor, amounting to about $700, was paid by Gerringer to W. H. Burke. W. H. Burke stated in his testimony that he afterwards paid $650 of this money to his brother. On the 5th day of the same month, W. H. Burke conveyed the land in controversy to Thomas Burke for the expressed consideration of $1,800, the receipt of which was acknowledged in the deed. This deed was acknowledged and recorded in said Cooper county. W. H. Burke, who testified on behalf of defendant, stated that he had this deed recorded and afterward took it out of the recorder's office; that he never delivered it to his brother;

that it was without consideration, and he was induced to make it on account of a claim for dower of Mrs. Fowler to a part of it; that his purpose was to get better terms of settlement with her, and that there was also a claim of about $66 against him. He stated to several witnesses after making the deed to Thomas, that he had sold the land to his brother for so much cash, and the balance was to be paid so soon as they heard from "the ould country." His son Thomas was only about one year old when the deed to Thomas Burke was made. Other evidence material to the questions to be decided will be noticed in its proper connection. The court found the issues for the plaintiff, and the defendant has brought the case here by appeal.

I. The first question, and the chief one discussed by appellant's counsel, is that relating to the alienage of the plaintiff and his ancestor. Touching this issue it might be sufficient, perhaps, to say that the answer having averred that the plaintiff and his father were unnaturalized and had never declared their intention to become citizens, the burden of this issue rested on defendant. And, if the decision in *State v. Killian*, 51 Mo. 80, be correct, the proof fell short of the averments. In the case referred to, which was an action to have an escheat declared against land, it was held that the petition was defective, because it did not allege that the alien had not declared his intention to become a citizen, etc. And this, for the reason that the forfeiture could not be declared against him if he filed such declaration, and it was necessary to show that the land was held by one who was not within the exception. Much more so would this rule apply where the defendant, in order to defeat the *prima facie* right of the plaintiff, as heir, affirmatively alleges the want of such declared intention of citizenship. There was proof, perhaps, extracted from plaintiff, on cross-examination, from which the court might find the plaintiff and his father were born abroad, but there was scarcely anything to warrant a finding that neither had filed declaration of intention. But waiving this mat-

ter of pleading, we are satisfied that this branch of the defense is not sustained. The rigors of the common law in this respect, were early modified in the legislation of this State, until by successive enactments, the disabilities consequent upon alienage, to acquire and hold real property by purchase, devise and descent, have been nearly swept away. By the first enactment, (vol. 1, p. 697, Ter. Laws 1820,) the disability of the alien, in this respect, was removed as to foreigners residing in any of the United States or territories, who had made declaration of intention of citizenship. This continued in substance until 1835, (R. S. 1835, p. 66,) when not only aliens residing in the United States who had made such declaration of intention, but aliens resident in this State were made capable of acquiring real estate by purchase or descent, and of alienating the same. This provision was carried forward into the statutes of 1845, page 113, with the additional right of " holding " real estate. This was re-enacted in the statute of 1855, page 187, with the additional privilege to a non-resident alien to convey the land of his ancestor or devisor, provided it was conveyed within three years after the final settlement, etc. This act, with some unimportant additions was re-enacted in the revision of 1865, p. 448. And in 1872 the legislature practically swept away every impediment by enacting that: " Aliens shall be capable of acquiring by purchase, devise or descent real estate in this State and of holding, devising or alienating the same and shall incur the like duties and liabilities in relation thereto, as if they were citizens of the United States and residents of this State." It is not easy to comprehend the refinement of the argument that would disinherit this plaintiff in view of these statutes. Both ancestor and heir were residents of this State when the father acquired by purchase the real estate in question. Both lived here continuously until the father's death in 1874 and the heir has lived here ever since. The fact that the ancestor was an alien can make no difference as he resided in the State when he acquired the property and when

he died. After the legislature removed the disability in the case of a resident alien and then advanced to the declaration of qualifying the alien whether resident or not, to purchase, devise, take by descent and to hold, it would be violative of both the letter and the spirit of the law to say that the alien may buy, *hold* and devise and yet his heirs, especially a resident heir, cannot take by descent. The conclusion reached is supported by many adjudications under similar statutes, but our statutes are too plain to need any aid of judicial construction.

II. We do not deem it scarcely a matter in controversy that Thomas Burke, plaintiff's father, was the intended grantee in the deed made by W. H. Burke. The proof and circumstances are all one way, except the testimony of W. H. Burke. Of this witness it is just to say, from his conduct and contradictory statements, as disclosed by the record before us, he is wholly unworthy of belief; and the trial judge would have been justified in disregarding altogether his testimony, unless where corroborated by other testimony or circumstances. His testimony is full of palpable inconsistencies and reckless contradictions. Superadded to which he unblushingly took the witness stand and confessed to a forgery of the deed of June 12th, 1884, and to obtaining thereby, under false pretenses, $800.

III. It is chiefly on the testimony of this witness that the point is made by appellant's counsel, that there was no delivery of the deed made by W. H. Burke to Thomas Burke. What constitutes a delivery of a deed is often a mixed question of law and fact. An arbitrary rule ought not to be laid down. Each case must stand more or less on its peculiar facts. The intent to convey is evidenced by the act of making out and duly executing and acknowledging a deed. The delivery may be evidenced by any act of the grantor by which the control, or dominion, or use of the deed is made available to the grantee. It is not necessary it should be handed over actually to the grantee, or to any other person for him. It may be delivered under cer-

tain circumstances, though it remain in the possession of the maker. Where, however, there is not an actual transfer from the grantor to the grantee, it should affirmatively appear from the circumstances, acts or words of the parties, that the intention to pass the title really existed.

In *Jackson v. Phipps*, 12 John. R. 421, Judge Spencer said : " This delivery must be either actual, by doing something and saying nothing, or else verbal, by saying something and doing nothing; or it may be both; but by one or both of these it must be made; for otherwise, though it be never so well sealed and written, yet is the deed of no force."

In *Burt v. Cassety*, 12 Ala. 734, it was held that where A had a deed drawn, and either by his attorney, or in person, carried it to the recorder to be recorded, that was a sufficient delivery, although the deed was not in fact recorded. The court say : " In our judgment these facts clearly establish a delivery of the deed. It is of no importance whatever that the vendee was not present when the deed was made. She is presumed to assent to it as the deed was for her benefit." The Supreme Court of Pennsylvania very properly, as I conceive, hold that while the recording of the deed is not absolutely conclusive of the fact of delivery it is evidence thereof and an assurance by the grantor of title in the grantee. *Blight v. Schenck*, 10 Penn. St., 289. The countervailing proof therefore that the recording was not designed as a delivery should be clear and persuasive in the instance where the grant was against the interest of the grantor, as where the receipt of the purchase money is acknowledged in the deed. In an early decision our Supreme Court held that the recording of a deed did away with the old common-law livery of scizin. *Perry v. Price*, 1 Mo. 555.

In *Ayres v. Hayes*, 13 Mo. 252, it was held that a deed of trust recorded by the maker without the knowledge of the beneficiary was a substantial delivery. Its acceptance by the *cestui que trust* might be presumed because the grant

was for his benefit; and in *Pearce v. Dansforth*, 13 Mo. 360 it was again held that "the delivery of a deed by the grantor for the purpose of having it recorded may under proper concurring circumstances be regarded as a delivery to the grantee." I think both on authority and reason that where the deed is duly executed, acknowledged and put to record by the grantor it is persuasive evidence as against him, especially where the purchase money is receipted for, that he intended thereby to pass the title; and the act would constitute delivery so as to throw the burden on the grantor and his privies to show by clear countervailing evidence that it was not a delivery. In this case the "proper concurring circumstances" are strongly against the pretension that the deed was not delivered. The deed had remained of record for over five years, at the time of the grantee's death, unassailed. The grantor in the meantime stating to his neighbors that he had conveyed the land to his brother and received part of the purchase money and expected the balance in a short time. Within eight days after his brother died he committed an act of forgery in an effort to get the title out of him and his heirs. The fact that he had the deed in his possession after his brother's death is not important, in view of all the facts in this case. His brother was an illiterate man, they lived together and his brother died in the house where W. H. Burke lived, leaving a widow and this plaintiff, a mere boy, helpless and at the caprice of this wily uncle. We think the evidence of delivery was fairly submitted and this issue was found for the right party.

IV. The estoppel set up in this case rests on the following state of facts: In February, 1880, when the agent of DeForest went to Burke to procure the quit-claim deed the plaintiff was there as a member W. H. Burke's family. He, perhaps, heard talk about making a deed and knew that a deed or something of the kind was drawn up; and he afterwards aided his uncle in moving from the premises and knew that the defendant came into possession. He

33—80

said nothing, did nothing, only remained silent. The only evidence of a tangible nature as to the plaintiff's age was his own statement. He was then, according to his evidence, under twenty-one years old. If so this is a complete answer to the estoppel. *McBeth v. Trabue,* 69 Mo. 657; Bigelow on Estoppel, 490. It is also necessary to an estoppel *in pais* that the party should at the time be apprised of his rights. "Silence without knowledge works no estoppel." 31 Pa. Stat. 334. "There is no such thing as estoppel *in pais* for neglecting to speak or act when the party did not know the facts which if known would have made it his duty to speak or act." 6 Hill 16; 14 Cal. 368. The evidence as well as the surrounding circumstances tended to show pretty conclusively that the plaintiff at the time in question was quite ignorant of his rights. 59 Mo. 344. But what is more conclusive against this defense is another element in estoppel *in pais*; the act must have been done with the intention that the other should act upon it and the other party must have been induced thereby to act, to change his relation to the subject matter and to his injury, were the party allowed to assert the contrary. Big. on Estop. 480. There is nothing in this record to show an intention on the part of this plaintiff that DeForest's agent should act upon his conduct. He was only silent, an ignorant boy under the influence and control of his uncle, vaguely, if at all, comprehending what was in fact transpiring. But how can it be said that DeForest's agent by reason of any act of this plaintiff acted in this matter or changed his attitude toward the property? The agent was dealing with the uncle, scarcely aware of the presence of this boy. What has DeForest lost by his silence? In what respect did he change his attitude? His money had long prior thereto been put into his uncle's hands. As DeForest could have gotten nothing more than the right, title and estate of W. H. Burke in this land by foreclosing his trust deed, and got that under the quit-claim deed,

what has he suffered by reason of the plaintiff's silence? If he was induced by plaintiff's non-action to take the quit-claim deed in satisfaction of the debt he did not thereby lose his right of action against W. H. Burke for the debt because the fraud would have been no bar.

V. The defense of the statute of limitations interposed is without support. The evidence shows that the two brothers and their families either lived together in the same house or separately on this land. There was nothing in the occupancy of W. H. Burke inconsistent with the title of record of Thomas Burke. His occupancy was neither adverse nor exclusive, nor was there any act of his during his brother's lifetime to show that he made claim of exclusive ownership. There was in fact no evidence to justify an instruction on this branch of the case at defendant's instance.

VI. It is finally claimed by appellant that this was a voluntary conveyance and a fraud upon existing and future creditors of W. H. Burke. It would be a sufficient answer to the first branch of this suggestion to say that no one of the alleged existing creditors at the time of the conveyance are complaining. The dower interest of Mrs. Fowler was not an existing debt of W. H. Burke, it was an existing incumbrance on the land which no act or deed of the owner of the fee could defeat or affect. *Williams v. Courtney*, 77 Mo. 588; *Walker v. Larkin*, 79 Mo. 664.

There is nothing in this record demanding any discussion of circumstances under which a conveyance would be a fraud as to future creditors. The debt to DeForest was created seven years after this alleged fraudulent deed was put to record. And there is not one word of credible evidence in the record on which any court would have been justified in voiding the deed on that ground.

The appellant has pressed upon our attention other minor points; they have not been over looked, but in our judgment are of such a character as in no manner to affect

the merits of the case. On the whole record the judgment was unquestionably for the right party and the judgment of the circuit court is therefore affirmed. All concur.