McBETH v. TRABUE *et al.*, *Appellants.*

1.  **Public Highway, Dedication of.**  A father cannot make a valid dedication of land belonging to his wife and children to public use as a highway.

2.  ———, **by one of several Tenants in Common.**  A dedication by one tenant in common of a part of the common property to public use, will not bind his co-tenants, so as to prevent them from inclosing and using the part so dedicated.

3.  ———: NO ESTOPPEL AS AGAINST MARRIED WOMEN AND INFANTS. Married women and infants will not be concluded from denying that a road laid out across their land is a public highway by reason of having traveled constantly over it and having admitted it to be public.

4.  ———: VOID ACCEPTANCE BY COUNTY COURT.  An order of the county court declaring a road to be a public highway, made at the instance of one who has no interest in the land over which it runs, and without taking the steps pointed out by the statute for acquiring land for road purposes, is a nullity as against the owner.

*Appeal from Monroe Circuit Court.*—HON. JOHN T. REDD, Judge.

*Thomas H. Bacon* for appellants.

1.  Adjoining owners, appellants had created the avenue over their adjoining lands under the belief that the

avenue was likewise created over the land involved, and this was the moving consideration; they, with the public, had so enjoyed the avenue for seven years; the parties vending the land had, during said period, concurred and participated in said establishment and use of said avenue, knowingly and profitably availing themselves both of the property and the deception of said adjoining proprietors, and said vendors had never obstructed or disputed said avenue, and the obstruction, if made by them, would have been a fraud on said adjoining proprietors, and, therefore, said vendors being of years of discretion at the time of the creation of the avenue, although minors or covert, would have been precluded from recovery against such adjoining owners for removing such obstructions, (*Shenley v. Commonwealth,* 36 Pa. St. 29,) by at least a defensive estoppel. *Allen v. Sales,* 56 Mo. 28.

2. One co-tenant's deed for fractional area of the common land is good under either the statute of conveyances, (Wag. Stat., § 1, p. 272,) or of partition, (Ib., § 7, p. 966; Story Eq. Jur., (8 Ed.) § 656; Freeman on Co-ten. and Part., p. 619, § 508, note 4; § 507, p. 527; § 434, p. 256; §§ 201, 204; *Barnhart v. Campbell,* 50 Mo. 599,) and so under the statute of uses, (Wag. Stat., p. 1351, § 2,) and as the greater includes the less, a co-tenant's deed of way over such fractional area must be valid. The deed of every co-tenant was never, at common law, required to effectuate a co-tenant's deed of a meted and bounded part of the common land. The simple permission of the other co-tenants made valid such several deed of the vendor co-tenant as to his estate, (*Barnhart v. Campbell,* 50 Mo. 597,) and this doctrine is applied to the creation of easements of way. 3 Kent Comm., (11 Ed.) p. 554, side p. 436. As this consent constituted neither a conveyance nor a contract, neither did minority, coverture or the statute of frauds disable such co-tenants from consenting. The deed which fails as a dedication may create a right of way, (Washb. Easements, (3 Ed.) p. 181, side 129, foot 175, § 7; p. 194,

side 138, foot 186, §§ 17, 18,) and the life tenant's incumbrance, binds at least his life estate. Ib., p. 166, side 116, § 72; Wag. Stat., *supra.* Majority should be presumed until disproved, (*Jeffrie v. Robidoux*, 3 Mo. 34,) and the date of respondent's title deed shows the co-tenants of age six months before the way was obstructed.

3. The avenue had been accepted as a public road by Marion county, and as such it had been worked and continuously enjoyed for over five years, and the road overseer was, therefore, bound to clear the obstruction, (Acts 1874, p. 141, § 34,) and if the avenue proved an illusion those acting under his authority were not liable in damages. *Butler v. Barr*, 18 Mo. 357; *Patten v. Weightman*, 51 Mo. 432.

4. The avenue was *prima facie* a public highway, (Wood on Nuisances, 233, § 240,) and, therefore, disputable only by resort to courts of justice. Redress by private entry is obsolete in Missouri. *Bartlett v. Draper*, 23 Mo. 407; *Miller v. Northup*, 49 Mo. 397.

*W. H. Hatch* and *James Carr* for respondents.

1. Samuel Singleton's dedication could not affect the rights of his wife and children. He did not own the fee. Angell on Highways, § 132; *City of Hannibal v. Draper*, 36 Mo. 332. Mrs. Singleton's interest could only be divested by a deed executed by herself jointly with him. Wag. Stat., 275, §§ 13, 14; Ib., 273, § 2; *Clark v. National Bank*, 47 Mo. 17.

2. Mrs. Singleton is not estopped by the recital recognizing the existence of Bowling Avenue contained in the deed to lot 17, for several reasons, viz: *First*, The recital deed does not embrace the lot in controversy, (lot No. 16.) *Second*, The recitals in a deed estop only parties and privies, and the appellants are neither. *Third*, The recitals in a deed by which a married woman purports to convey her title to land, do not estop her, nor those claiming under

her, from asserting the truth against the recitals. *Hempstead v. Easton*, 33 Mo. 142 ; *Cottle v. Sydnor*, 10 Mo. 764. Several of the children were minors. They certainly could not be estopped by traveling over the road and seeing others travel over it.

3. There may be a dedication of land for a public highway by *user* alone, but the intention to dedicate must be clear and unequivocal. Mrs. Singleton and two of her children were *femmes covert,* and could not manifest an intention or give consent to a dedication of their inheritance in any other manner than as prescribed by the statute; nor could the minors for the same reason. *Stacey v. Miller*, 14 Mo. 478; *Becker v. St. Charles*, 37 Mo. 13; *Mo. Institute v. How*, 27 Mo. 211 ; *Brinck v. Collier*, 56 Mo. 160.

4. There being no consent and no condemnation, there was no highway. *Cooper Co. v. Geyer*, 19 Mo. 257 ; *Wilson v. Berkstresser*, 45 Mo. 283; *Golahar v. Gates*, 20 Mo. 236. The road overseer was not protected by the order of the county court declaring Bowling Avenue a public highway. It was a nullity for the reason that the county court never acquired jurisdiction over the person and subject matter. *Carpenter v. Grisham*, 59 Mo. 247 ; *Parker v. Shackelford*, 61 Mo. 68; *Dunbar v. Weightman*, 51 Mo. 432; *Dickey v. Tennison*, 27 Mo. 372.

NAPTON, J.—The plaintiffs in this case became owners of the lot described in the petition, which was lot 16 in the sub-division of the Darr estate, by purchase, in 1873, from Samuel Singleton and his wife and their five children. There is no dispute as to the regularity of their title. But, in answer to their action for trespass by defendants in breaking down their fences, a previous dedication of the land or lot to the public was claimed, and consequently that the road overseer, and those of the defendants who acted in conjunction with him, were justified in removing the obstructions on this public highway. Whether such dedication was effected by the acts of those from whom

plaintiffs purchased, is the controlling question in the case, and, to determine this, it will be necessary to recite the history of the title and the acts and deeds which are claimed to have dedicated this land to the public as a highway.

Mary B. Darr was the fee simple owner of lot 16 in 1858. By her will in 1858, she devised it to her son, Virgil C. Darr, and in the event of his death, without issue, to her sister, Sarah A. Singleton and her children. Virgil C. Darr died in 1865, without issue. In 1867, Samuel Single-ton, the husband of Sarah A., along with fourteen others, owning lands between the Ralls county road and the city of Hannibal, executed the following deed: "This article of agreement, made and entered, by and between Thomas Bowling, Aedna Owen, widow of Adison Owen, deceased, L. C. Owen, William H. Owen, Caroline Owen, Edward Owen, Juliet Carstarphen, formerly Juliet Owen, John Carstarphen, her husband, Elizabeth Gordon, formerly Elizabeth Owen, A. G. Gordon, her husband, Samuel Sin-gleton, Chapel Carstarphen, Charles Blume, Thomas Kaup, all of the State of Missouri, and Thomas Carr, of the State of Illinois, witnesseth, as follows: That for and in consid-eration of our mutual benefit and advantage, and the con-venient use of our lands lying and bordering on the south line of the Hannibal & St. Joseph Railroad, in Marion county and Ralls county, between the points hereinafter designated; and for the further consideration of the inter-change and payment to each other, by the rest, of the sum of $5.00, the receipt of which we hereby acknowledge, we each agree and covenant with the others, and each of the others, that from and after signing and acknowledging, and delivery of this contract, we, and each of us, will and do hereby convey and dedicate for the use of each other, our heirs and assigns forever, the right of way over our lands lying in Marion and Ralls counties, in the State of Missouri, between the points hereinafter designated, and bordering immediately on the south line of said railroad for thirty feet wide, beginning and ending as follows, to-wit: Be-

ginning in Marion county, State aforesaid, on the lands lately sub-divided and sold for partition under a decree of court by Henry S. Lipscomb, commissioner for division among the heirs of Peter Lindell, deceased, according to the map of sub-division of said last named lands, at the west boundary line of Baker street, at a point thirty feet south of said railroad bed lands, thence run westwardly by south on a line parallel with said railroad bed lands over lots 69, 68, 67, 62, 70, 73, 72 and 74, according to the map of sub-division of said Lindell lands filed of record in Marion county, aforesaid, thence along the south line of said railroad, westwardly by south over the lands of the widow and heirs of Adison Owen, deceased, the lands of Chapel Carstarphen, Samuel Singleton, Thomas Kaup and Thomas Carr, aforesaid, to the east boundary line of Brittingham's lands, where the county road crosses said railroad at right angles in Ralls county, Missouri, we, each for ourselves, agreeing and covenanting with the others for ourselves, our heirs, administrators, assigns and executors, and covenanting also with the heirs and assigns of each of us respectively, that the said conveyance and dedication of said thirty feet of land between the points aforesaid, lying south of said railroad, and adjoining said railroad company's bed lands, shall be forever free as a street thirty feet wide for the use of the owners and occupants of the lands bordering thereon now and hereafter; for our use and to the use of our heirs and assigns respectively, as a private way or street to be designated, known and named Bowling avenue. This conveyance and dedication of said street way is intended to be and remain perpetual, and is irrevocable, unless by the mutual and joint consent of each and every owner of the lands over which said street shall run, and such consent shall be signified in writing, duly acknowledged and spread upon the records of Marion and Ralls counties by such owner or owners. Nor shall it be in the power of any owner or occupant of any portion of the land over which said thirty foot street shall run, now

or hereafter, ever to obstruct the right of way over the same, or any part thereof, to any one choosing to pass over or use said street.   Nor shall any one of us, our heirs or assigns, have a right in law or equity to reclaim any portion of said street so conveyed or dedicated, unless by the joint consent of the owners of every part of said land throughout the length and breadth of said Bowling avenue, and said consent shall be expressed in writing, acknowledged and recorded as aforesaid." This instrument was duly executed and acknowledged by the parties named in the body of it.

On Monday, the 22nd day of February, 1869, the following proceedings were had in the county court of Marion county: "This day was presented to the court the petition of Thomas Bowling, praying the court to accept the road that is now of record in the circuit clerk's office at Palmyra, which road is known as Bowling avenue, as a public road, which petition being examined by the court the same is referred to the road commissioner, who is instructed to view and lay out the same, and report his proceedings therein to this court, at the April court." And afterwards, to-wit:   On Thursday, the 6th day of May, 1869, the following proceedings were had, to-wit: "This day was presented to the court the petition of Thomas Bowling, praying the court to accept the road that is now of record in the circuit clerk's office at Palmyra, which road is known as Bowling avenue, as a public road, which petition being examined by the court, the same is referred to the road commissioner, who is instructed to view and lay out the same, and report his proceedings therein to this court at the April court." Which petition is in the words and figures as follows, to-wit:   The undersigned would respectfully submit to the honorable county court of Marion county, to accept the road that is now of record in the circuit clerk's office at Palmyra, Marion county, Missouri, which road is known as Bowling avenue, and

pray the court to accept the same as a public highway.

THOMAS BOWLING.

February 22nd, 1869.

And afterwards, to-wit: On Tuesday, the 8th day of June, 1869, the following proceedings were had, to-wit: "This day was presented to the court the report of the county road commissioner, on a petition referred to him by this court, the 22nd day of February, 1869, signed Thomas Bowling, praying the court to accept the road that is now of record in the circuit clerk's office at Palmyra, which road is known as Bowling avenue, stating that ' he had examined the aforesaid road, and would recommend that the petition be granted,' therefore, it is ordered by the court, that the report of the road commissioner be accepted and said Bowling avenue be, and the same is hereby declared a public road and highway."

The defendants also offered in evidence a deed from Samuel Singleton and his wife, Sarah A., to W. P. and Oney Carstarphen, dated February 25th, 1871, to lot 17 of Darr's sub-division, in which were the usual covenants of *seizin* and good right to convey, and that the premises were free from incumbrances. The description of the lot conveyed is followed by the words " except the parts of said lot set apart for Bowling avenue and the Hannibal & Central Missouri Railroad." This deed was rejected by the court as irrelevant to the issue, and exceptions were taken to the ruling. There was also evidence to show that the Singletons, father, mother and children, had frequently traveled over this avenue, and recognized it as a public highway, and some of them had declared it to be such. Upon the close of the testimony the court gave the following instructions :

1. If the jury believe from all the evidence in the cause that William Darr, in his life-time, entered into possession of the land in controversy, claiming title by purchase from the United States Government, and continued in the actual possession thereof up to the time of his death,

and that, thereafter, Mary D. Darr continued in actual possession under purchase at the partition sale of the estate of said William Darr, claiming under the sheriff's deed read in evidence, and remained in possession thereof up to the time of her death, and that, thereafter, Sarah Singleton and her children, Sam'l F. Singleton, Wm. E. Singleton, John B. Singleton, Sarah H. Gaines and Susan M. Gaines, continued in actual possession thereof under the will of said Mary D. Darr, read in evidence, until the time of sale by said Sarah Singleton and her said children to Frederick Pate & Co., and that said Frederick Pate & Co. entered into possession thereof under an agreement to purchase from said Sarah Singleton and her said children, and continued in such possession until the sale to McBeth and Meyers, the plaintiffs, and that said plaintiffs entered into possession under purchase of the rights of said Frederick Pate & Co., and the deed from Sarah Singleton and her said children, read in evidence, and so continued up to the time of the trespass complained of, the jury will find that plaintiffs were the owners of the land in controversy at the time of the trespass complained of, and their verdict should be for plaintiffs.

2. If the jury find a verdict for plaintiffs, they should assess the actual damages sustained by plaintiffs, by reason of taking down and removing of the fence and gates; and if the jury further find from the evidence that the act of the defendants in taking down and removing plaintiffs' fence and gates was malicious, they may assess in favor of plaintiffs and against defendants, by way of exemplary damages, in addition to the actual damages, such sum as the jury may believe, under all the circumstances, to be a just and reasonable punishment for the malicious act.

3. In assessing the actual damages sustained by plaintiffs, the jury should allow such sum as would reasonably be sufficient to pay for materials and labor required to rebuild plaintiffs' fence and gates, and place them in as good condition as they were before they were torn down;

and in addition thereto, they should allow a reasonable compensation for the injury to the use of plaintiffs' goods arising out of the defendants' acts for such time as would reasonably be required to rebuild such fence and repair said gates and rebuild them.

4. Although the jury may find that one or more defendants did not engage in tearing down or removing plaintiffs' fences or gates, yet if the jury find that such defendant, or defendants, were present and did aid, abet or encourage the parties engaged in the act, such defendant, or defendants, are liable in this action to the same extent as the parties actually engaged in the act.

5. Although the jury may believe from the evidence that after the fence on the land in the petition mentioned, was moved in so as to leave a strip of thirty feet between said fence and the line of the right of way of the railway company, the said strip was with the knowledge of Mrs. Singleton and her children used by all persons desiring to pass over the same in going to and from Hannibal, and although the jury may further find that Mrs. Singleton and her children, themselves, passed over said strip in going to and from Hannibal, such use of said strip does not operate, in law, as a dedication of said strip to the public use as a public highway.

6. If the jury find from the evidence that, from 1869 up to the time plaintiffs erected their fences and gates in 1874, the portion of the land described in the petition from which defendants removed the fences and gates, had been traveled daily by the public going to and from Hannibal, and the said Bowling avenue was respected and considered, in the neighborhood, as a public road; and if the jury further find that, after the erection of said fences and gates plaintiffs were notified to remove the same; and if the jury further find that defendants, in the discharge of what they believed to be a legal right, did take up and remove so much, only, of the plaintiffs' fences and gates as stood within the limits of what they believed to be a public high-

way, the plaintiffs are not entitled to recover any sum in excess of the actual damages arising from the defendants' act in taking up and removing said fences and gates.

7. If the jury find from the evidence that defendants believed, in good faith, that plaintiffs' fences and gates taken down and removed by them, were standing in a public highway; and if the jury further find that defendants removed said fences and gates, in the exercise of what they believed to be a legal right to remove obstructions from the public highway, such act of defendants was not a malicious trespass, and the jury should not allow any sum by way of exemplary damages.

8. The act of the county court in declaring Bowling avenue a public road, as shown by the records in evidence, did not operate to vest in the public the right to use any part of the land, in the petition mentioned, as a public highway.

9. The deed read in evidence by defendants, executed by Samuel Singleton, Thomas Bowling, and others, did not operate as a dedication of any part of the land, in the petition mentioned, to the public use as a public highway.

The following instructions were asked by the defendants and refused: 1. The court instructs the jury that if they find that the alleged trespass consisted in the removal of certain fences, &c., which had just been erected by plaintiffs across a strip of land, which, in 1869, and continuously ever since, and up to the time of said erections, had been used and traveled by the public as a public road, without hindrance or interruption, and that said strip of ground, so traveled, had been, during said time of said use, and at the time of said erections, was fenced off from other lands and visibly marked and designated on either side, on the borders of said strip of land, by good and substantial fences, and in full public use, as aforesaid, and that the defendant, Henry S. Elzea, was the road overseer of the road district in which said strip of ground was situate, and that said strip of ground had been worked as a county road by

parties residing in the vicinity under the authority of a former road overseer of said district, and that up to the time of said obstruction said strip of ground was commonly known and reputed to be a public road, and upon said obstruction being made, and immediately thereafter, the defendant, Henry S. Elzea, in his capacity as said road overseer, gave plaintiffs reasonable notice to remove said obstruction, and plaintiffs neglected to remove the same, and thereupon said Henry S. Elzea, as said road overseer, with said other defendants, under his personal direction and authority, carefully removêd said obstruction, opening barely enough to admit a passage-way for the public, and doing this in good faith, believing that they were removing an obstruction from a county road, the said Henry S. Elzea likewise acting under the reasonable apprehension of prosecution under the law for failing to remove said obstruction, then the defendants are not liable, and the jury will find for the defendants.

2. The court instructs the jury that if they find that Philip Frederick, Demiah K. Johnson and John Pate made an agreement with Thomas Bowling, one of the defendants, that if he, Thomas Bowling, would secure the purchase of the Singleton land for stockyard purposes, being the land involved, that the public travel over said land on what was called Bowling avenue should not be obstructed, and that Thomas Bowling agreed to give his services to the securing of said purchase, and did secure to said Frederick, Pate and Johnson said purchase in pursuance of said agreement, and that said Frederick, Pate and Johnson paid $500 of the purchase money and entered into possession of said lands, and erected valuable improvements thereon, and verbally declared that said avenue should remain open for public travel, and assented to the working of said avenue for the purpose of traveling thereon to and from said land and * * for hauling materials thereto to build said stockyards, and for business purposes in carrying on said stockyard, thereby using the lands of some defendants

in such travel, and that, thereafter, in March, 1874, the plaintiffs bought out said Frederick, Pate and Johnson with full notice of the existence of said Bowling avenue, and received possession of said land from Frederick, Pate and Johnson, and took from them quit-claim deeds along with said possession, and thereafter the plaintiffs continued to use the said Bowling avenue in the same manner and for said purposes, the public, meanwhile, being in full and daily use in public travel over said avenue as a public road, and having been in such use since 1869 continuously, and said avenue being at all said times inclosed from private grounds by a good and substantial fence on either border of said avenue, and that about May 23rd, 1874, the plaintiffs first began to obstruct travel on said avenue, and that said travel had not been obstructed during said time, and that in June, 1874, the plaintiffs entirely closed up said avenue, then the plaintiffs were estopped from disputing or obstructing public travel over said avenue, and the jury will find for defendants.

3. The court instructs the jury that if they find that the alleged trespass consisted in the removal of certain fences, &c., which had just been erected by plaintiffs across a strip of ground which, in 1869, and continuously ever since, and up to the time of said erections, had been daily used and traveled by the public as a public road without hindrance or interruption, and that said strip of ground so traveled had been, during said time of said use, and at the time of said erection, was fenced off from other lands and visibly marked and designated on either side on the borders of said strip of ground by good and substantial fences, then the plaintiffs had no right to dispossess the public without process of law; and if the jury further find that the plaintiffs did, without any process of law, erect across said thirty foot strip of ground the certain fences, &c., mentioned in plaintiffs' petition, and thereby prevent further travel, and that the plaintiffs were duly notified before and after erecting said fences, &c., not to obstruct public

travel by said fences, &c., and the defendants being citizens and land owners of the vicinity, did peaceably remove said obstructions without doing other damage, then the jury will find for defendants.

4.   The court instructs the jury that if they find from the evidence that, in 1867, Samuel Singleton, in communicating with the parties signing the instrument of writing, creating what is called Bowling avenue, represented himself as the owner of the land herein involved and thereby induced them to enter into said agreement in good faith, believing that he was the owner thereof, and that the Bowling avenue thereby created ran over his land, to-wit: the land involved, and was so understood by them, and that, thereafter, the said avenue was opened in good faith, and the fences removed to the south line of said avenue, and that Samuel Singleton, Sr., and his two sons, John and Samuel C. Singleton, set back the fence on said land herein involved, and said avenue was then thrown open for public travel, and that public travel greatly benefited the lands bordering on said avenue, and that said avenue was, in 1869, known, recognized and used as a public road, and that, thereafter, Mrs. Sarah Singleton and Samuel Singleton, Sr., and said John and Samuel C. Singleton, declared the same was never to be stopped up, and said Samuel Singleton and wife declared the same to be a public road, and all the children of Mrs. Sarah Singleton continuously traveled on said avenue from the time the same was opened until the same was closed, in 1874, and that said avenue was in full view, in front of, and close to the family residence of said Samuel Singleton, where all of said parties, to-wit: Samuel Singleton, his wife and children resided, and that the public traffic continued uninterrupted thereon until said avenue was closed, and that said wife and children had actual knowledge of said Bowling avenue, and actual knowledge that said parties in said instrument believed that said road was a public road, and if the jury further find that the said Singleton, and wife and children

derived great benefit from the opening of said avenue per-
sonally, also that said Singleton's land was not accessible,
except by way of Bowling avenue, and by said avenue was
brought into market and greatly increased in value, and in
reliance on said avenue being a public road some of the
parties to said instrument of writing sub-divided the lands
fronting on Bowling avenue into lots, and sold and con-
veyed the same, recognizing said avenue, and the same were
bought on the faith of said avenue, and all with knowl-
edge of said Singleton, wife and children, and that in
January, 1874, Ella Singleton died, and that the stoppage
on said land involved would greatly depreciate the values
of said other lands bordering on said avenue, then the said
Singleton, wife and children are estopped from disputing
said public travel, and the jury will find for defendants.

The verdict was for the plaintiffs, and damages were
assessed at $500. The usual applications were made for
new trial, &c.

It will be seen from this statement that the obstacles
to successful defense against the alleged and conceded tres-
pass, based on the ground of a dedication to
the public of Bowling avenue as a highway,
were very formidable. It is observed in Angell's work on
Highways, that "a primary condition of every valid dedi-
cation is that it shall be made by the owner of the fee," and
it is remarked by Mr. Justice Goldthwaite, in *Hoole & Paulin,
v. Atty. Gen.*, 22 Ala. 190, that "it is a self-evident propo-
sition that a dedication, or gift of land for public uses, can
only be made by the owner or proprietor." C. J. Abbott
observes in *Wood v. Veel*, 5 Barn. & Ald. 456, that "noth-
ing done by the lessee, without the consent of the owner
of the. fee, would give the right of way to the public."
We have not met with any judicial decision, either in this
country or England, which conflicts with this elementary
principle. The owners of lot 16, through which Bowling
avenue was located, were Mrs. Singleton and her children.
Our statute provided a mode by which their land could

1. PUBLIC HIGH-
WAY, DEDICATION
OF.

have been condemned for public uses. That mode confessedly was not pursued. They were married women or children. The deed of the husband and father, even if conceded to amount to an attempt to dedicate to the public the land of his wife and children, would be of no avail, since he was not the proprietor, and had at best only a tenancy by courtesy of a life estate.

But if he had an absolute interest, as is contended, in that portion which his deceased daughter could transfer, **2. ——, BY ONE OF SEVERAL TENANTS IN COMMON.** that would only make him a tenant in common with his wife and surviving children. Can one out of six or eight tenants in common destroy the title of his co-tenants by acts and deeds amounting to a dedication? The reason upon which the principle is settled that the owner can alone make the dedication, would seem to exclude any such assumption.

We have a great number of decisions by this court on this subject, but in all of them, so far as I have observed, **3. ——: no estoppel as against married women and infants.** the question now under consideration, did not arise. In all of them the dedication relied on was one produced by act or deeds of the owner, and of an owner *sui juris*, and surely acts of infants or married women have never entered into the consideration of the court as tending to deprive them of their property. It would not merely be in conflict with the common law which we adopted in 1816, but in conflict with our statutes, which specifically point out how the interests of persons so situated are to be affected. In this case it does not appear that Mrs. Singleton ever executed any deed relating to the subject, and certainly it is not shown that her children did. There is evidence to show that she and they traveled over this road constantly, and admitted that it was a public highway, but surely it will not be seriously contended that such acts and declarations divested them of their title. Had they been *sui juris*, competent to divest themselves, we might have been of opinion that their acts would have that effect. But some of them were married

women and some minors, and as they were tenants in common, the act or declaration *en pais* of one would not bind the others.

As to the act of the county court in declaring Bowling avenue to be a public highway, it was obviously a mere nullity. It was made on the petition of one out of fourteen proprietors of the land through which it ran, and if it had been made on the petition of all those who signed the deed appropriating thirty feet of their lands to a private road to and from Hannibal, it would leave the question as to the rights of Mrs. Singleton and her children untouched. That question the county court could not decide.

4. ——: void acceptance by county court.

It appears clear that Mrs. Singleton and her children owned this land until the conveyance to the plaintiffs, and consequently, that the plaintiffs had a right to inclose it, which they did. The instructions of the court in regard to damages, seem to be very fair, and the damages found by the jury were very moderate. We see no reason, therefore, to reverse the judgment, and it is accordingly affirmed. The other judges concur.

AFFIRMED.