ATKISON v. HENRY *et al.*, *Appellants.*

**Husband and Wife's Joint Estate in Land, Conveyance of**: TITLE
BOND: EQUITY.   Where husband and wife are seized in entirety,
the husband may, without joining his wife, convey his legal or
equitable estate, subject to her right of survivorship.   But, where
the husband alone executed a title bond for such land, *Held*, that the
wife's estate could not be divested by reason thereof, although she
afterward received from her husband part of the purchase money
and thereupon expressed satisfaction with the sale.

*Appeal from Bates Circuit Court.*—HON. F. P. WRIGHT,
Judge.

REVERSED.

Plaintiff deraigned title through a deed from Joel
Wisely to his daughter, Martha Hensley, and her husband,
George B. Hensley, executed June 8th, 1857; a bond for a
deed dated August 17th, 1858, not acknowledged, from
George B. Hensley, alone, to Thomas H. Starnes, condi-
tioned upon payment of a note by Starnes for $150 due one
year after said date and given for part of the purchase money;
and a deed to plaintiff from Starnes' administrator.   De-
fendant Henry deraigned title from the Hensleys by their
deed dated September 7th, 1867, to the heirs of R. B. Fisher,
and a deed from said heirs to defendant, dated July 26th,
1867.

The testimony was to the effect that neither at the
time of the execution of the title bond, nor at any time
prior thereto, did George B. Hensley consult with his wife
in relation to the sale of the land, but that, about two
weeks thereafter, he gave to her the $150 note for part of
the purchase money upon her declaration that she would
then be satisfied with the sale.   She sold the note and re-
ceived the money for it.   A judgment in favor of the hold-
ers of this note was obtained against Starnes, the maker,
and the land was sold by the sheriff October 11th, 1860,
upon an execution issued upon the judgment.   At the sale

Fisher purchased the land, but the sheriff's deed, if any was executed, was not recorded nor offered in evidence. There was some testimony that Fisher at the sale stated that he was bidding in the land for Starnes, that afterward Starnes expressed to Fisher a wish that he should keep the land, and some conflict of evidence as to whether thereafter Starnes made claim to the land. Martha Hensley testified that when she and her husband went to Linn to sign the deed of September 7th, 1867, they supposed such deed was to be made to Starnes or his legal representatives; that when they saw it was made to the Fisher heirs, they inquired the reason and were informed that they had bought Starnes' interest, and that she signed to perfect the title in the person holding under Starnes; that the $50 consideration expressed in the deed was received by them for making the deed, but not as part of the purchase money for the land.

*A. Henry* for appellants.

*C. C. Bassett* and *Smith & Shirk* for respondents.

Sherwood, J.—This is an equitable proceeding, having for its object the divesting of whatever legal title the defendants, or either of them, may have in the premises in controversy, and the vesting of the same in the plaintiff. This object was attained by the decree entered by the court below in favor of plaintiff. Hensley and Martha, his wife, were seized in entirety of the land in dispute, and they are the common source of title. But the title bond executed by Hensley alone to Starnes for that land only had the effect of conveying to him whatever equitable right Hensley had thereto, and this right was subject to be defeated entirely, or, to speak more accurately, terminated by Hensley's death occurring anterior to that of his wife. And no doubt is entertained that it was competent for Hensley to alien by his title bond his equitable right in the land, as well as he could transfer his legal title in the same by his

deed executed without joining his wife with him. These positions are fully supported by *Hall v. Stephens*, 65 Mo. 670, and cases cited.

The result of these positions is, that plaintiff by his purchase at the administrator's sale only acquired whatever equitable right Starnes had in the land by reason of execution to him of the title bond by Hensley. After the execution of that bond the rights of Hensley's wife remained as they were before, and had Hensley died with matters thus remaining, it is clear from the authorities cited that his wife would have taken the whole estate as the survivor, just as she would have done had no transfer of either the legal or equitable interest of her husband occurred. If Starnes never parted with his equitable interest in the land acquired through the medium of the title bond from Hensley, then plaintiff as a matter of course acquired that interest, but no more; there still remained outstanding in Hensley's wife her interest in the land unaffected by anything done by her husband. And the fact that she accepted the note for $150 given to her husband by Starnes, as and for part of the purchase money, and was satisfied with the sale made by her husband after she ascertained it, cannot vary the result. The mere acceptance by the wife of a portion or all of the purchase money of a tract of land in which she holds the fee, or of which she together with her husband is seized in entirety, constitutes in equity no ground for compelling specific performance or of extorting a deed from her.

Nor if said deed had been made either to the wrong person or for the wrong tract of land, does equity possess any power to make the deed speak the intention of the parties by reforming it. *Shroyer v. Nickell* 55 Mo. 264, and cases cited; 7 Cent. L. Jour. 182, and cases cited. When possessed of the legal title to lands, either in her own right, or with her husband of an estate in entirety, the only way she can manifest her intention to convey, or her consent to the conveyance of her interest in such lands, is by a deed executed

in conjunction with her husband and acknowledged as the statute prescribes. *Devorse v. Snider*, 60 Mo. 235; *Baldwin v. Snowden*, 11 Ohio St. 203; *Ackert v. Pultz*, 7 Barb. (N. Y.) 386; *Shroyer v. Nickell, supra.* And the certificate of acknowledgment to such deed is the only thing which gives authenticity to the deed of a *femme covert*, the only repository which the law recognizes of the fact that she intended to convey to the grantee named in the deed the tract of land therein described.

If she intended to convey to a different party, or, what in effect amounted to the same thing, if she intended to convey a different tract of land, and failed in this, all that can be said is that: "A *femme covert* is utterly incapable of binding herself by a contract to convey her land, either at law or in equity, except by compliance with the prescribed statutory forms. An attempted contract on her part is not such compliance, nor is her disappointed intention to convey clothed with those forms." *Shroyer v. Nickell, supra.* And as before stated, the reception by Martha Hensley of the note for $150 given by Starnes for a part of the purchase money, cannot change the rule which prevails in courts of equity in this regard.

In *Purcell v. Goshorn*, 17 Ohio 105, Avery, J., observed: "No precedent, as it is supposed, can be found of a decree against a *femme covert* to convey land held by descent, or by the usual conveyance, upon the ground of her having agreed to convey or her having executed a defective conveyance, whether upon a full consideration paid or not; and the fraud of the wife in the transaction would make no difference. That a mistake in a deed cannot be corrected against a married woman, was decided in the case of *Carr v. Williams*, 10 Ohio 305."

The most that courts of equity have ever done in cases of this sort, cases where a *femme covert* is the recipient of the purchase money of land and fails from any cause to make an effective conveyance of the land sold, is to declare and hold the land bound for the re-payment of the pur-

chase money.   Such a ruling as this has passed into precedent in *Shroyer v. Nickell, supra,* and in *Pilcher v. Smith,* 2 Head 208, and it is strongly intimated in *Martin v. Dwelly,* 6 Wend. 9, where the subject of the disability of a married woman to convey her land in any manner save that pointed out by the statute, is discussed with distinguished ability and the authorities exhaustively reviewed.

Speaking on this subject, Mr. Justice Story says: " This disability can be overcome only by adopting the precise means allowed by law to dispose of her real estate; as in England by a fine, and in America by a solemn conveyance." 2 Eq. Jur., § 1391. And the ruling just cited of charging the land of a *femme covert* with the purchase money when prematurely paid, *i. e.,* when paid before a deed perfect in all its parts, executed and acknowledged, is delivered to the purchaser, is a ruling based upon an idea altogether independent of contract or of a valid contract having been made, but proceeds upon the idea that such premature payment creates a constructive or implied trust or lien in favor of the vendee.   Adams Eq., 126, 127 ; *Mackreth v. Symmons,* 15 Ves. 344, 353 ; 2 Story Eq. Jur., §§ 1215, 1217, 1218, 1220, and cases cited.   So that it matters not, so far as the lien of the vendee for money prematurely paid is concerned, whether such vendor was *sui juris* or whether a valid contract was made or not.

Taking the premises here laid down as correct, and they are supported by an overwhelming weight of authority, what interest did Atkison acquire by reason of his purchase at the administration sale ?   If Starnes, the decedent, had lived, the most he could have done, and the best he could have done, according to the authorities, would have been to have gone into a court of equity and compelled a conveyance to him of Hensley's legal title in the land, and as to Mrs. Hensley he could perhaps have had the purchase money declared a lien on the land, and the land sold unless the purchase money were re-paid; on this point, however, no opinion is expressed.   But beyond the acquisition of

Hensley's legal title he could not have gone, nor did he acquire by reason of his purchase from Hensley any interest whatever in the legal or equitable right of the wife in the land. Yet notwithstanding this, if Hensley had outlived his wife, whatever right Hensley possessed would have gone to Starnes in consequence of the title bond executed to Starnes by Hensley. If then Starnes died the possessor of all the rights he acquired by the title bonds; if they never passed by release or transfer to Fisher, then Atkison is now the possessor of those rights, and, if Hensley should survive his wife, Atkison will be the equitable owner at least of the land in controversy, and will be entitled to the legal title corresponding to his equitable title.

But there is no inconsiderable amount of testimony tending to show that whatever interest Starnes had in the land had been transferred to Fisher. The testimony of Mrs. Dobbins tends to induce belief that Starnes transferred to Fisher all of his interest in the land in question. And there are other circumstances pointing in the same direction. But should it be assumed that no such transfer to Fisher occurred, still I have been unable to find in this record sufficient evidence to warrant a court of equity in holding that Fisher's heirs or that Henry were purchasers with notice of Starnes' interest in the land, or that either of them were guilty of any fraudulent conduct in obtaining a deed from Hensley and wife to Fisher's heirs for the land, or in conveying or in having conveyed that land to Henry. But if it be true that Atkison, by reason of his purchase at the administrator's sale, acquired all the equitable interest in the land Starnes ever possessed, still he acquired no more than that which was the interest Hensley, the husband, had in the land, subject to his wife's right of survivorship. But certainly Atkison, by his purchase, did not acquire any interest either legal or equitable in Mrs. Hensley's estate in the land, and this for the sufficient reasons: 1st, Atkison's purchase at the administrator's sale occurred after the deed made by Hensley and wife to Fisher's heirs;

and 2nd, His purchase was measured by the title bond of Starnes, which only embraced Hensley's interest and not his wife's interest in the premises in dispute. If then fraud was practiced by Henry in procuring the deed from Hensley and wife to Fisher's heirs, or if Hensley and wife made a mistake in conveying to those heirs, such fraud or such mistake concerned Atkison only so far as respects Hensley's legal estate in the land, and this only on the supposition that Starnes' interest remained intact down to the time of his death.

Even, however, if Starnes did then remain the equitable owner of Hensley's interest in the land, if either Fisher's heirs or Henry are to be regarded as purchasers without notice of Starnes' claim, then Henry acquired the entire title in the land in controversy. In consideration of the foregoing, if it be taken for granted that Henry is a purchaser with notice of Starnes' interest; that he practiced a fraud on Mr. and Mrs. Hensley in inducing them to make a deed to the Fisher heirs, still for the reasons already stated the decree of the court below is too broad in divesting out of Henry the legal or equitable interest of Hensley's wife, as well as the legal title of Hensley himself. Upon no theory of the case ought the decree to have embraced more than the legal interest of Hensley himself. And it may be remarked in conclusion, that in order to establish mistake or fraud in making a deed to the wrong person, in order thereby to divest an estate already vested by deed, the evidence ought to be so clear, strong and unequivocal as to leave no room for reasonable doubt in the mind of the chancellor. *Forrester v. Scoville*, 51 Mo. 268; *Fessenden v. Ockington*, 74 Me. 123, and cases cited.

The judgment is reversed and the cause remanded. All concur.