Mueller  v.  Kaessmann.

MUELLER, *et al.* v. KAESSMANN *et al.*, *Appellants.*

1. **Husband and Wife :** HIS POWER OVER HER LAND, NOT HER SEPA-RATE ESTATE.   A husband cannot charge, bind or convey land of his wife in which she has no separate estate, except by deed duly executed and acknowledged in conjunction with her in the manner provided by statute.   Overruling *Kanaga v. R. R.*, 76 Mo. 207.

2. **Married Woman, Promise of :** SEPARATE ESTATE : SPECIFIC PER-FORMANCE.   A promise of a married woman can only affect or bind her land in which she has a separate estate.   And when her title is such an one as falls within the provisions of section 3295, Revised Statutes, her parol promise, though made in conjunction with her husband, constitutes no basis for specific performance.

3. **Parties :** EJECTMENT : HUSBAND AND WIFE : MISJOINDER OF PARTIES : AMENDMENT IN THIS COURT BY STRIKING OUT NAME OF PARTY.   In this state a wife is not a necessary party to an action of ejectment by her husband for her land.   But if she be improperly joined in such action, objection should be made to such misjoinder in the trial court, and, in any event, this court, as well as the trial court, may, under the provisions of the statute respecting amendments, strike out her name.   Following *Cruchon v. Brown*, 57 Mo. 38, and *Weil v. Simmons*, 66 Mo. 617.

*Appeal  from  Buchanan  Circuit  Court.*—HON.  JOS. P. GRUBB, Judge.

AFFIRMED.

This was an action of ejectment by Christian Mueller and Frederika Mueller, his wife, for lot 6 in block 26 in the city of St. Joseph.   Defendant, Kaessmann, the ten-

ant, answered, stating that he held under the trustees of the "Evangelical Lutheran St. Peter's Congregation," a church of which he is pastor. The trustees, who are joined as defendants in the petition, set up that their possession was solely as trustees of said church, which was organized in 1875, mainly through the activity and solicitation of the plaintiffs, who were also members of the church, Christian Mueller being treasurer and trustee; that said Christian Mueller proposed to defendants and their associates to organize the church and promised, if they would so join with him, to buy the property in question and donate it, or its use, to the church, for religious purposes, the defendants to pay two hundred and fifty dollars of the purchase price, which they did, and also to make certain improvements on the property, build a parsonage, and bear the burden of supporting the church. That in compliance on their part, the defendants and their church brethren, in various ways, contributed in money and labor, a large amount, the parsonage was built, the church repaired and fitted up, a pastor called and put in possession, and the regular and customary meetings of such an organization held; that soon after the church was organized, some question being raised about the terms of Christian's promise to donate the church, he gave the church council the following writing:

"ST. JOSEPH, Mo., October 14, 1876.—I, the undersigned, declare hereby that I am ready to give the Evangelical Lutheran St. Peter's Congregation a free deed for the church property and parsonage as soon as the costs for building the parsonage and other debts are paid.
"CHRISTIAN MUELLER."

Whereby plaintiff, Christian, declared he was the owner of said property, and on the faith of said promise the defendants incurred the expenditures aforesaid; that the plaintiff, Christian, advanced, as treasurer of the church society, what was necessary over and above

the contributions of defendants, to build the parsonage, all of which was tendered to him before the commencement of this suit, which tender is renewed in the answer. The answer further avers that the plaintiff, Mrs. Mueller, is a mere depositary of the title, the same having been made to her merely for the convenience of her husband ; that she paid no part of the purchase price, and knew the purpose for which the property was bought, and was actively engaged with her husband in organizing said church, holding out to all her husband's promised donation as an inducement to join and contribute to the support of the church and improvement of the property. The answer concluded with a prayer for specific performance and for general relief.

Plaintiff filed a general denial, also pleaded the statute of frauds, and averred an offer to return the two hundred and fifty dollar note given for defendants' share of the purchase price.    On the trial, plaintiffs, to sustain their action, read in evidence a warranty deed whereby John DeClue and Ellen DeClue, his wife, for the consideration of twenty-two hundred and fifty dollars, on September 23, 1875, conveyed the premises to the plaintiff, Frederika Mueller, the *habendum* clause being, "to have and to hold the said premises with all the rights, privileges, and appurtenances thereto belonging or in any way appertaining unto the said Frederika Mueller, her heirs and assigns, forever."    This deed was acknowledged in due form and was recorded October 1, 1875.

After proof by plaintiffs of the rental value of the premises, defendants read in evidence the instrument of writing executed by Christian Mueller and recited in the answer and also offered other evidence tending to support the allegations of the answer.    The cause was tried by the court sitting as a jury and resulted in a finding and judgment for plaintiffs.    The motion for a new trial assigned the usual grounds therefor, and also "that the recovery must be had in the name of plaintiff, C. Mueller,

alone, and the female plaintiff being an improper party, the defendant's defence was a complete bar and estoppel to any recovery by him."

*Vinton Pike* for appellants.

(1) The trustees having paid a part of the purchase price of the church property, before or at the time of conveyance, a proportionate trust resulted in their favor. They have the admitted equitable title to an undivided $\frac{250}{2250}$ ($\frac{1}{9}$) of the original purchase (4 Kent's Com. 344-6 [366-7]), notwithstanding the other issues may be decided for plaintiffs. (2) This title gives them the right to possession of their undivided portion, and cannot be destroyed or taken away by a tender back of the consideration paid for it. But no tender was made; the allegation in the reply was not sustained; for aught the court can know Ludwig Mueller still retains the note, or has collected it. *Mohan v. Waters*, 60 Mo. 170; *Pratt v. Morrow*, 45 Mo. 404; *Kerr v. Bell*, 44 Mo. 120. (3) Plaintiffs concede they ought not to recover without returning something, and their offer has not been made good. (4) The defendants took possession under a parol gift and made valuable improvements. There is no material difference between a sale and a gift. *Tyler v. Eckhart*, 1 Binney 378; *Halsa v. Halsa*, 8 Mo. 303; *Bowles v. Waltham*, 54 Mo. 264; *Rumbolds v. Parr*, 51 Mo. 598. (5) Putting the title in Mrs. Mueller's name does not affect the right of defendants. "Coverture will not be allowed to operate as a sword instead of a shield." *Barnum v. Bobb*, 68 Mo. 619; *Leahey v. Leahey*, 11 Mo. App. 413. (6) Mrs. Mueller was bound by the acts and promises of her husband. *Wilkerson v. Allen*, 67 Mo. 502.

*Woodson, Green & Burnes*, and *Judson & Motter*, for respondents.

(1) The evidence is clear that long before the par-

sonage house was built or contracted for the legal title to
the property in suit was vested in the female plaintiff by
deed duly recorded in the recorder's office of Buchanan
county ; that there is no pretense that said female plain-
tiff ever agreed at any time to convey the property to
the church.     Certainly her husband had no power to
bind her to make a conveyance ; even if he had attempted
to do so, the recordation of the deed from DeClue to her
imparted notice to everybody of her claim to and owner-
ship of the property.   2 Wag. Stat., 935, sec. 14 ; *War-
nell v. Kern,* 51 Mo. 150 ; *Clark v. Rynex,* 53 Mo. 380 ;
*Whitney v. Stewart,* 63 Mo. 360.    (2) The evidence, all
taken together, shows, most satisfactorily, that Christian
Mueller only agreed to give the property to the church
when the church refunded to him the purchase money
paid to DeClue for the property.    There is no claim on
the part of appellants that this money was ever paid or
tendered to him. (3) The evidence shows that the church
paid no considerable part of the cost of the parsonage.
Mueller paid the note for two hundred and fifty dollars
given for putting seats in the church—offered it in evi-
dence upon the trial below, and appellants' own witness
stated that it had been paid by Mueller.   Appellants'
own evidence established the fact that Mueller had paid
more than five hundred dollars for erecting the parsonage
that cost about six hundred dollars.    (4)  The evidence
offered by the appellants to establish Christian Mueller's
promise to convey the property, is too contradictory and
unsatisfactory to authorize the court to act upon it.
1 Story's Equity Jurisprudence (12 Ed.) sec. 767.  (5) But
even if it should be conceded for the purposes of this
argument, that C. Mueller did have an agreement with
the church that he, upon certain conditions, would con-
vey the property, as contended for by appellants, we hold
that they have wholly failed to show that the conditions
have been complied with.    (6)  There is no pretense that
Christian Mueller was in debt at the time he gave the
property to his wife, and directed the deed to it to be

made to her by DeClue; or, that it was done to hinder, delay or defraud creditors.   (7) Not only did the deed of record to Mrs. Mueller impart notice of her ownership of the property to everybody, under our statutes, but the evidence shows that in the church meetings and among the members of the church, the title to the property was questioned, and they were thus put upon inquiry as to the title.

SHERWOOD, J.—I.   Mrs. Mueller being seized of the fee in the land, having no separate estate therein, her husband was powerless to bind, charge or convey the land except by a deed duly executed and acknowledged in conjunction with his wife.   This point, which arises on the provisions of the statute (R. S., 1879, sec. 3295), has been uniformly and frequently ruled in this way by this court, ever since the statute was first enacted.   1 Wag. Stat. 935, sec. 14; *Wannall v. Kem*, 51 Mo. 150; *Clark v. Bank*, 47 Mo. 17; *Clark v. Rynex*, 53 Mo. 380; *Silvey v. Summer*, 61 Mo. 255; *McBeth v. Trabue*, 69 Mo. 642; *Bartlett v. O'Donoghue*, 72 Mo. 563; *Goff v. Roberts*, 72 Mo. 570; *Hord v. Taubman*, 79 Mo. 101.

II.   And because Mrs. Mueller had no separate estate in the land, any promise made by her, if she made any, could not affect, nor have any effect on, her legal or equitable interest in the land; and this owing to her common law marital disability.   *Shroyer v. Nickell*, 55 Mo. 264; *Whitely v. Stewart*, 63 Mo. 360; *Hord v. Taubman*, 79 Mo. 101; *Bagby v. Emberson*, 79 Mo. 139; *Meier v. Blume*, 80 Mo. 179; *Atkison v. Henry*, 80 Mo. 151.

For the reasons aforesaid, no specific performance could be decreed against her, or against her husband, and, therefore, judgment affirmed.   All concur.

### On Rehearing.

SHERWOOD, J.—This cause has been re-argued.   Two points are urged why a different result should have been reached in the original opinion.   They are, first, that

Christian Mueller, the right of action for the possession of the land being in him alone, was estopped by his conduct from maintaining ejectment, and, second, that his wife was not a proper party plaintiff. These points will be considered in the order presented.

I. Mrs. Mueller was seized of the land in fee in the ordinary way, no separate estate being created by the deed conferring title upon her. To her title, therefore, section 3295 of the statute applies: "The rents, issues, and products of the real estate of any married woman, and all money and obligations arising from the sale of such real estate and the interest of her husband in her right in any real estate which belonged to her before marriage, or which she may have acquired by gift, grant, devise, or inheritance during coverture, shall, during coverture, be exempt from attachment, or levy of execution for the sole debts of her husband; and no conveyance made during coverture by such husband of such rents, issues, and products, or of any interest in such real estate shall be valid, unless the same be by deed executed by the wife jointly with her husband and acknowledged by her in the manner now provided by law in the case of conveyance by husband and wife of the real estate of the wife." This statutory language would appear to be too plain to admit of and support but one meaning: that by its express terms the husband during coverture is cut off, deprived, disabled, and foreclosed from the exercise of his common law rights in his wife's land; and this I propose to verify.

What were the rights of the husband at common law in the land of the wife? These: he was jointly seized with her of that land; had, *jure uxoris*, the exclusive right to the possession of that land, its rents and profits; could make a tenant to the *præcipe*; could lease or mortgage the land by his own deed alone, or, by his deed, without joining his wife with him, convey his marital interest in the land, which conveyance would be good during their joint lives, and his free-

hold estate might have been seized and sold on execu-
tion. 2 Kent Com. 130, 131 ; 1 Bishop on Mar. Wom.,
sec. 529 ; Clancy on Rights, 162. If the statute I have
quoted does not change the marital *status* of husband
and wife in respect to the wife's land as it existed at
common law, it would be impossible to conceive of any
force of language or collocation of words which could
accomplish that purpose. It seems too clear for argu-
ment that if heed be given to the plain letter of the
statute, that no other rational conclusion can be reached
but that it is a *disabling statute* which, by force of its
own inherent potency, changes the common law relations
between husband and wife, so far as concerns land held
by her in severalty, and lays the iron hand of its re-
strictive rigor not only on his creditors, but likewise on
him, preventing them from selling under execution his
interest in such land for his sole debt, and him from con-
veying during coverture, the "rents, issues, and products,
or of *any interest in such real estate,*" unless by deed
executed and acknowledged conjointly with his wife.
That this is the effect of the statute has been frequently so
ruled by this court. *Clark v. Bank,* 47 Mo. 17 ; *Hall v.
Stephens,* 65 Mo. 670 ; *Warnall v. Kem,* 51 Mo. 150 ;
*Silvey v. Summer,* 61 Mo. 255 ; *McBeth v. Trabue,* 69
Mo. 642 ; *Clark v. Rynex,* 53 Mo. 380 ; *Bartlett v.
O'Donoghue,* 72 Mo. 563 ; *Hord v. Taubman,* 79 Mo.
101. In the case last cited it was said : "In a conveyance
made under the provisions of the statute, of the fee of
the wife, the title can only be transferred as an *indivisi-
ble integer,* or not at all."

In *McBeth v. Trabue, supra,* it was ruled that where
the wife was seized in fee of the land and conveyed it in
1873, the prior sole conveyance by the husband of a por-
tion of the land for the purpose of dedicating it as a
public road, would be utterly inoperative against such
subsequent deed notwithstanding the county court and
the public as well as the husband, wife, and children had
accepted and used the road as a public road, and that the

grantee under the deed of 1873 could maintain trespass against those who interfered with their rights in that portion of the land which the husband of their grantor had attempted to convey by his deed of dedication. In *Bartlett v. O'Donoghue, supra,* the plaintiff brought ejectment and after showing title in the wife, in order to show title in himself offered, without objection, an unacknowledged deed from the husband and wife to himself. After adverting to the provisions of the statute already quoted, and ruling that as to the wife no title passed by the deed, it was said: "Nor can it be held to convey the *marital right of possession of the husband,* inasmuch as the statute provides that no conveyance of such interest shall be valid unless the same be by deed executed by the wife jointly with the husband and acknowledged by her in the manner provided for the conveyance by husband and wife of the real estate of the wife. 2 Wag. Stat. 935, sec. 14. The plaintiff, therefore, has failed to show any right of possession whatever, and the judgment cannot be permitted to stand."

This review of other cases brings me to that of *Kanaga v. R. R.,* 76 Mo. 207, upon which defendants, with all confidence, rely. In that case it was ruled that the husband and wife's consenting that a railroad company should enter upon the land of the wife, and construct its road, would prevent the husband and wife from subsequently maintaining ejectment against such company, and that the estoppel of the husband, by his conduct in the premises, would prevent either husband or wife, or both of them, from recovering possession of the land during the existence of the marriage relation. The cases of *Bartlett v. O'Donoghue,* and of *McBeth v. Trabue, supra,* were pressed upon our attention both in argument, and in brief in *Kanaga's case,* but passed unnoticed, or, if considered by this court at all, were evidently considered as having no bearing on the question then at issue. So that the rulings of this court on this subject, when

placed in *juxtaposition*, may be summarized thus : That the marital right of possession of a husband in his wife's real estate, held by her in severalty, under the provisions of the statute respecting married women, cannot pass by his *sole deed*, and such deed is utterly worthless as a basis for a recovery of the possession of the premises by the grantee of the husband in an action of ejectment, but that while this is so, if the husband, instead of making a void and valueless deed executed by himself alone, should give a railroad company *parol permission* to construct its road over his wife's land, and the road be accordingly constructed, this would, during coverture, prevent any recovery of the land thus dedicated, and his right to the possession of the dedicated strip as well as that of his wife be cut off during that period. I freely confess my inability to perceive the force of the reasoning which reaches such an anomalous result ; which denies to the sole deed of the husband, though executed and hedged about with all the solemnities known to the law, any more operation than a sheet of blank paper, and yet bestows upon his "*word of mouth*," his oral *permission, such title-conveying force !*

I am unable to see why his act *in pais* can cut a wider swath than his solemnly executed deed. Speaking on this point an eminent author says : "The importance of fixing as far as may be, by proper limits, the doctrine of estoppel *in pais*, in its application to titles of real estate, seems to require some additional illustrations to what has already been said. And, in the first place, an estoppel *in pais*, where it applies, *is as effectual as a deed, but no more so*. So that, if the party doing the act could not have made a deed of the land in question, his act cannot create an estate by estoppel in the same." 3 Washburn on Real Prop. 77. The principle thus enunciated seems so obviously correct, so self-evident, that it should command the immediate assent of every legal mind. If its correctness be conceded, then *Kanaga's case* was improperly decided, in that it empowers the

husband to do more by his act *in pais* than he could by his deed, and by his deed he could do nothing. In Tennessee, where a married woman's act, similar in all respects to the one at bar, fell under discussion, the Supreme Court, after adverting to the common law doctrine respecting the husband's marital interest in his wife's land, his ability to convey that interest by his sole deed, which would bestow upon the purchaser his freehold estate, having a duration commensurate with the joint lives of husband and wife, possibly during the life of the husband, and rendering the wife powerless either at law or in equity to regain, during coverture, the possession of the land, remarked respecting the act referred to : "By that act the common law is materially changed. It not only protects the husband's interest in the lands of the wife from seizure and sale by his creditors, *during her life*, but it likewise disables the husband to sell or dispose of such interest, by his own act, during the wife's lifetime, without her joining in the conveyance. By the necessary construction of this act, the wife cannot be deprived either of the title, or possession of her lands, except by her own voluntary act." *Coleman v. Satterfield*, 2 Head 259. To the same effect is *Jenney v. Gray*, 5 Ohio St. 45.

If, as already stated, the statute under consideration is a *disabling* statute, one whereby a husband is shorn of his common law marital interest in his wife's land, so far as any disposition of it is concerned, it must needs follow that his situation toward his wife's land is precisely the same as hers towards his land, the statute *enabling* her to convey her interest in his land by complying with certain conditions ; and the statute *disabling* him from conveying his interest in her lands unless upon compliance with similar conditions. In a word, under the act in question, the husband as well as the wife, labors under the *disabilities of coverture*, and can do no more than could the wife in similar circumstances. Speaking on this subject of a married woman's disability

in this regard, a distinguished writer says : "A married woman could not do by acts *in pais* what she could not do by deed. She could not by her own act enlarge her legal capacity to convey an estate. To say that one might by acts in the country, by admission, by concealment, or by silence, in effect do what could not be done by deed, would be practically to dispense with all the limitations the law had imposed." Bigelow on Estop. 510. Applying to the case at bar the foregoing reasoning and authorities, I think it abundantly clear that to continue to give to the statute in question the construction already placed upon it by this court, would be to overthrow, set at naught, and nullify its provisions. I am, therefore, constrained to say that in my opinion *Kanaga's case*, in so far as it conflicts with the views herein expressed, should be no longer adhered to.

Another reason occurs why there can be no estoppel *in pais* in this case, and that is, that the deed which conveyed the land in controversy to Mrs. Mueller in fee, was on record, and notice to all the world of just where the title was. The doctrine of estoppel cannot be successfully invoked where everything is equally well known to both parties, or where, though ignorant of the true state of the title at the time of the occurrence of the act which is claimed as an estoppel, the party making such claim had the means of ascertaining the truth of the matter, by reference to the records. 3 Washburn on Real Prop. 74; *Hill v. Epley*, 7 Casey 331; *Brant v. Virginia, &c. Co.*, 3 Otto 326.

II. I come now to consider whether the wife was a proper party plaintiff, and if not a proper party, the effect of such misjoinder on the judgment recovered in the lower court. Section 3515, Revised Statutes, designates seven causes of demurrer, the last being: "That a party plaintiff, or defendant, is not a necessary party to a complete determination of the action." And sec-

tion 3519, *Ib.*, provides that if no objection be taken to the petition, either by demurrer or answer, the defendant shall be deemed to have waived the same, except only that the petition does not state facts, etc., and that the court has no jurisdiction, etc. As the defendants raised no such objection in the lower court, in the manner the statute has pointed out, they certainly cannot raise it here, for the first time, granting that the objection was in all respects a tenable one, if opportunely made. *Edmondson v. Phillips*, 73 Mo. 57; *Kellogg v. Malin*, 62 Mo. 429.

At common law it was necessary for the husband to join his wife with him in an action to recover the real estate of the wife. 1 Chitty's Plead. 84; *Weller v. Baker*, 2 Wilson 414; *Thacher v. Phinney*, 7 Allen 146; 1 Bulst. 21. And, certainly, under our code, which permits that all parties in interest may be made plaintiffs (sec. 3464), and which requires that actions be prosecuted in the name of the real party in interest (sec. 3462), it would seem that the joinder of the wife with the husband in an action for the possession of her realty, would be unobjectionable, as she is the meritorious cause; and if the common law rule has not been abrogated by our code it would seem that she *must* be joined. It has, however, been otherwise decided in this state, the husband being regarded as the only necessary party plaintiff in actions for the recovery of her lands. *Gray v. Dryden*, 79 Mo. 106; *Cooper v. Ord*, 60 Mo. 420, and cases cited. But waiving all that, say that in the present case she was improperly joined with her husband, such joinder is not a fatal error, and may be corrected in this court by striking out her name as party plaintiff, and leaving the judgment to stand in the name of the husband alone. This point has been so ruled in at least two cases by this court, and has thus passed into precedent. *Cruchon v. Brown*, 57 Mo. 38; *Weil v. Simmons*, 66 Mo. 617. And our statute expressly authorizes it,

by permitting the trial court *after final* judgment in furtherance of justice, and on such terms as may be just, to amend, in affirmance of the judgment, any record, pleading, process, entries, returns, or other proceedings in the cause, by adding or striking out the name of a party, or a mistake in any other respect, etc., and providing that such judgment shall not be reversed or annulled therefor; (section 3570). And section 3582, after prohibiting a judgment from being "stayed, reversed, or impaired, or in any way affected," in consequence of a great number of enumerated mistakes, proceeds to enter a similar prohibition against such reversal because of "any informality in entering a judgment, or making up the record thereof," or "for any other default or negligence of any clerk or officer of the court or of the parties, or of their attorneys by which neither party shall have been prejudiced." These ample provisions are followed by those of section 2583, whereby it is provided that "the omissions, imperfections, defects, and variances in the preceding section enumerated, and all others of a like nature, not being against the right and justice of the matter of the suit, and not altering the issue between the parties on the trial, shall be supplied and amended by the court where the judgment shall be given, or by the court into which such judgment shall be removed by writ of error, or by appeal." Assuredly, if the legislature has the power to confer authority on the courts to make such an amendment as is above suggested, then doubtless such authority has been conferred. If such language does not confer it, then the statute is meaningless.

This matter is discussed at large in 8 Central Law Journal, 340, where the authorities and our statutory provisions are commented on quite fully. In New York, from which state we have derived our code, it is a matter of common occurrence to make such amendments as have been mentioned, and no one of the great array of learned lawyers who abound in that state has ever ques-

tioned the power of the courts, either trial or appellate, under such a statute. *Ackley v. Tarbox*, 31 N. Y. 564; *Angell v. Cook*, 2 N. Y. Sup. Court, 175; 2 Wait's Prac. 506, *et seq.*; 7 *Ib.* 186.

For these reasons the judgment should, as at first ordered, stand affirmed. Norton and Black, JJ., concur.

HENRY, C. J., and RAY, J., DISSENTING. We adhere to the original opinion filed in this cause, but dissent from this.