## CLARK & CO. *vs.* GODDARD.

[ACTION FOR DEFAMATION.]

1. *Sufficiency of complaint.*—In an action for defamation, in falsely representing that the plaintiff was the defendant's indentured apprentice in the printing art, a complaint which avers, that the representations were made "to H. B. & Co., the proprietors of the *Tribune* office, in which plaintiff was employed as a printer, warning them not to employ him, or continue him in their employment; by means whereof, plaintiff was discharged from his said employment, and has lost the emoluments and support therefrom ever since"; and that, "by reason of said false and malicious representations, to said *Tribune* office and other printing offices in Mobile, plaintiff has been deprived and prevented from obtaining any employment in his business as a printer ever since," is sufficiently definite and certain, under the rules of pleading allowed by the Code.
2. *What English statutes form part of common law here.*—The statute of 5th Elizabeth, chapter 4, entitled "An act containing divers orders for artificers, laborers, servants of husbandry, and apprentices", being

Clark & Co. v. Goddard.

incompatible with the spirit of our institutions, does not constitute a part of our common law.

3. *Validity of infant's contract of apprenticeship.*—In this State, a contract of apprenticeship, under seal, entered into by an infant, is voidable at his election.

4. *Estoppel against infant by act of mother or agent.*—Neither the conduct of an infant's mother, in inducing another person to enter into a contract with him, nor the act of her agent in drawing the deed, can estop the infant from avoiding the contract.

5. *Charge invading province of jury.*—A charge which assumes a question of fact to be a question of law, or which attributes to the evidence, as matter of law, a construction and effect to which it is not necessarily limited, is an invasion of the province of the jury.

APPEAL from the City Court of Mobile.
Tried before the Hon. ALEX. McKINSTRY.

THIS action was brought by S. S. Goddard, an infant, who sued by his mother and next friend, against W. G. Clark & Co., and was commenced on the 16th November, 1858. The complaint, as amended, was as follows : "The plaintiff, *who is an infant under twenty-one years old,* who sues by his next friend and mother, A. M. Goddard, claims of the defendants two thousand dollars damages, for falsely and maliciously representing, *on the 29th day of July,* 1858, to H. Ballentine & Co., proprietors of the *Tribune* office, in which said plaintiff was employed as a printer, that plaintiff was their (defendants') indentured apprentice, warning said proprietors of the *Tribune* office not to employ him, or continue him in their employment; by means whereof, said plaintiff was discharged from his said employment, to-wit, on the day aforesaid, and has lost the emoluments and support therefrom ever since ; and by reason of said false and malicious representations as aforesaid, to said *Tribune* office and other printing offices in Mobile, plaintiff has been deprived and prevented from obtaining any employment in his business as a printer ever since."

The defendants demurred to the complaint, and assigned the following grounds of demurrer : " 1st, that said complaint does not show any ground wherefore plaintiff should sue by next friend ; 2d, that said complaint does not sufficiently allege plaintiff's employment by said H. Ballentine & Co., or that plaintiff was in fact a printer by trade ; 3d,

that said complaint is uncertain in the allegation touching 'other printing offices'; and, 4th, that no time is specified when the alleged damage was done by the defendants." The court overruled the second and third grounds of demurrer, and the plaintiff amended his complaint by the addition of the italicized words. The defendants again demurred to the complaint as amended, but the record does not show what (if any) causes of demurrer were specified; and, their demurrer being again overruled, they then pleaded the general issue, and a special plea in bar, which was in the following words :

"Defendants say, for a further plea," &c., "that said plaintiff, a minor, by deed of indenture, commonly called 'indentures of apprenticeship,' executed by him, under his seal, on the 1st day of November, 1855, and assented to, and approved in writing, by the said A. M. Goddard, his mother, now suing as his next friend, did bind and place himself, as an indentured apprentice, to said defendants, to be instructed and taught the trade of printing, (which trade, they, the said defendants, did then, and do now follow,) for the term of four years, beginning on said 1st day of November, 1859 (?). And said defendants aver, that they did take said apprentice, and did teach him said art and trade of printing, for a long period, to-wit, two years, or thereabouts, and did in all things fulfill and perform their duties and obligations under said deed of indenture, and were ready to perform all the duties and obligations arising out of said indentures, as masters, until the end of said term of apprenticeship; but said defendants say, that plaintiff failed to perform his duty to them under said indentures, in this, that he did depart and absent himself from the service of said defendants, his masters, without their leave, and against their will and consent, before his said indentures had expired, to their great damage. And said defendants aver, that said plaintiff, at the time and times referred to in said complaint, was still their indentured apprentice, and subject in all things to the performance of the duties of an apprentice, under the said deed of indentures, which is here brought into court. Wherefore, defendants say, that said plaintiff is estopped in this behalf from making his said claim against them," &c.

The plaintiff craved oyer of the deed referred to, and demurred to the special plea, assigning as causes of demurrer—"1st, that the mother had not the legal authority to bind the infant by said articles in said plea set forth, and the infant could not thus bind himself; and, 2d, that it did not appear from said plea, nor from said articles of apprenticeship as therein set out, that said articles had been executed by the defendants, and therefore they were not binding." The deed, as set out on oyer, was in form bipartite, but was signed only by the plaintiff, and recited that he was fifteen years of age, that his father was dead, and that he executed the articles with the consent of his mother; and his mother's consent was written at the bottom of the deed, describing herself as "sole guardian" of the plaintiff. The court sustained the demurrer to the special plea, and the cause was tried on issue joined on the first plea.

On the trial, as the bill of exceptions states, the plaintiff proved that, in July, 1858, he was employed as a journeyman printer in the *Tribune* office in Mobile, and was earning in that capacity about twelve dollars per week; that the defendants sent a written notice to the proprietors of that paper, and also to the other printing offices in Mobile, warning them not to employ him, as they claimed his services as their indentured apprentice; that, in consequence of this notice, he was discharged from said employment, and was unable to procure work at any other printing office in the city. It was proved, on cross examination of some of plaintiff's witnesses, that an association existed among the printers in Mobile, called the "*Typographical Union*," whose rules restricted membership to journeymen printers, and compelled all offices in connection with it to employ only its members; that the plaintiff was not a member of this association, and could not become a member, because he was not a journeyman or practical printer; that the *Tribune* office was not connected with this association at the time plaintiff was discharged from their employment, but became connected with it on the 1st September, 1858, and so continued up to the time of the trial. The defendants' evidence conduced to show, that the articles of ap-

prenticeship were written by one Blocker, who was the brother of plaintiff's mother; that they fulfilled all the obligations imposed on them by the articles, so long as the plaintiff continued in their employment; that the plaintiff himself was satisfied with his situation, and continued with them nearly three years, when he was induced by his mother to leave, in consequence of some controversy between them and her about the price of his board; and that she afterwards declared, "that her brother, she believed, had left a flaw in the deed, so that, in case of any controversy between her and Clark about the apprenticeship, they (meaning her son and herself) would have the best of it, and could take advantage of it."

The defendants requested the following (with other) charges to the jury:

"2. If the jury believe, from the evidence, that the legal insufficiency of the instrument called an indenture was contrived by the party who drew it, with the knowledge or acquiescence of plaintiff's mother, who sues as his next friend in the action, then the plaintiff cannot recover, and they must find for the defendants.

"3. If the jury believe, from the evidence, that said Blocker was plaintiff's uncle, and the brother of his mother, and was by them employed, as their lawyer, to draw said deed purporting to be an indenture of apprenticeship; and that by his act or omission, intentionally done, said deed is inoperative and void,—then the jury will not be warranted in finding for the plaintiff.

"4. If the jury believe, from the evidence, that there existed in Mobile a typographical association, whose rules excluded the employment of any persons but journeymen who were members of the association; and that the plaintiff was not a journeyman; and that the *Tribune* office, in which plaintiff was employed when said notice was given by the defendants, was then the only office in Mobile that was not a member of that association, but became a member of it on the 1st September, 1858; and that no proof has been made by plaintiff that there were any other offices in which he could have got employment, but from which he was excluded by defendant's said notice,—then plaintiff

has only sustained so much damage as may have accrued to him between the date of the notice and the 1st September, 1858."

The court refused each of these charges, and the defendants excepted to their refusal: and they now assign the same as error, together with the rulings of the court on the pleadings, as above stated.

W. C. EASTON, for appellant.

DARGAN & TAYLOR, contra.

STONE, J.—As the complaint now appears in the record, we do not think the city court erred in holding it good. It briefly, yet clearly, sets forth the grievances of which the plaintiff complains; and, under the rules of pleading prescribed by the Code, we think it sufficient.—Code, §§ 2227-8; and form on page 554; 2 Chit. Pl. 641 k.

[2-3.] The plea of justification admits that, at the time the appellee is alleged to have apprenticed himself to the appellants, he was a minor under twenty-one years of age. The contract is in form a deed, and constitutes a part of the plea. The question arises, are contracts of apprenticeship, entered into by infants, binding, voidable, or void? The argument in favor of their validity rests on the postulate, that it is beneficial to the infant to learn habits of industry, and to be instructed in some art or mystery. It is also argued that, at common law, infants had power to make binding contracts of apprenticeship; and if there be doubt of their common-law capacity, then, under the 4th chapter of 5th Elizabeth, which was enacted before the emigration of our ancestors to America, it is contended they clearly have such power.—See Carter and Wife v. Balfour, 19 Ala. 814.

We find the English authorities somewhat in conflict, on the question of the capacity of infants to make binding contracts of apprenticeship. This conflict, or rather uncertainty, is discoverable alike in the reported cases, and in the text-books. My own opinion is, that, independent of statutes on the subject, infants could not, at common law, make such contracts.—See Addison on Contracts, 81,

11

439–40; *Gilbert v. Fletcher*, Cro. Car. 179. See, also, 1 Parsons on Contracts, 262–3, and notes *e–f*; *Vent v. Osgood*, 19 Pick. 572; *Francis v. Felmit*, 4 Dev. & Bat. 498.

The statute 5 Eliz. cannot possibly be regarded as of force in this country. It is a very long and comprehensive act of parliament, embracing forty-eight sections, styled " An act containing divers orders for artificers, laborers, servants of husbandry, and apprentices." It comprehends much of the English system of servitude, makes provision for compulsory labor, and, in every respect, is incompatible with the genius and spirit of our institutions.—See 6 Stat. at large, 159.

If we hold that those contracts of infants which are beneficial to them are binding, and that those which are not beneficial are inoperative, how is the question to be determined, which are, and which are not, beneficial? Can the law lay down an unerring rule? and if it cannot, is this a question to be decided by courts, or by juries, on the particular circumstances which each case may disclose? The statement of these questions, it seems to us, forces a negative answer to each. In the case of *Weaver v. Jones*, (24 Ala. 424,) this court said: "The rule, as recognized by the charge, that the court, or (as in this case) the jury, must determine whether the contract was beneficial or prejudicial to the infant, and hold the contract voidable or void according to the result of such finding, has been rejected by many of the courts in modern times, as unsatisfactory and unsafe in its application, and as often contravening the principle upon which it was founded—namely, the benefit of the infant. It is certainly more conducive to his benefit, to afford him the opportunity of affirming, when of age, a contract which he may determine to be beneficial, than for the court or jury to determine the question for him."

This extract is suggestive of the difficulties which would attend any rule, which should leave to the court or jury trying the cause the decision of the question, whether the particular contract was, or was not, beneficial to the infant. We will hereafter speak of another feature of this extract. In continuation, we add, that the law cannot lay down a rule for the decision of this question, as the same

arises on this record; for some trades, or occupations, might, and probably would, be beneficial to the infant, while others would be injurious, unprofitable, and, in some cases, degrading. Trades and arts, well adapted to some capacities and circumstances, would be utterly ineligible under other circumstances.

Neither would a rule, which submitted this question to the judgment of a court or jury, be any more satisfactory or uniform. No one could know or tell, until the decision should be pronounced at the end of a litigation, whether the particular trade or employment would be beneficial or otherwise. A rule of such uncertain operation would lead to most ruinous results.

Neither would it do, in a case like the present, to hold that the infant should not be allowed to elect between the ratification and repudiation of his · contract, until he attained to lawful age. In most cases, the contract would have expended its force at that time; and to establish such a rule, would be to take from the infant all right to avoid the contract, until after it was executed. Surely, to withhold the right to renounce a voidable contract, until after its performance, would be as unjust as it is absurd.

If we hold that an infant may make a binding contract of apprenticeship, under the law as it now stands, we find no authority for limiting the exercise of the power by the infant to particular trades or callings, or to particular classes, save that, if the infant have a father living, he may assert his right to his son's services, and thus defeat the contract. The mother, not being the natural guardian of the son, nor entitled to his services, has no authority either to apprentice her son, or to prohibit it. A rule of such extensive operation should not be adopted, unless we are forced to it by some well-defined principle of law.

There is authority in our statutes for apprenticing the children of persons unable to provide for their support.— See Code, §§ 1215 *et seq*. If further authority on the subject be desired, the legislature can confer it. Until that body acts in the premises, contracts of apprenticeship made by infants must rest for their fulfillment on his part on such surety or sureties as the master may exact and the

apprentice may give. We hold, that the contract of the infant was voidable; and whenever he chose to avoid it, and to quit the service of his master, it was at an end.— See authorities *supra;* 1 Amer. Lead. Cases, 248.

What we have said above shows, that the city court did not err in sustaining the plaintiff's demurrer to the special plea of defendants.

[4.] The second and third charges asked were rightly refused. Neither the conduct of the plaintiff's mother, nor the act of her brother who drew the indenture of apprenticeship, can affect or impair the plaintiff's right of recovery.

[5.] Neither should the fourth charge have been given. We cannot know, if the plaintiff had continued in the employment of the *Tribune* office, that the proprietors of that paper would have joined the typographical association, or that they would not have reserved the right to employ him in some capacity. The charge assumes that, on the given facts, the plaintiff, *by a rule of law*, was precluded from recovering damages beyond the 1st day of September, 1858. The proposition was not necessarily true, and therefore it should not have been given in charge to the jury.—Shep. Digest, 460, §§ 26, 35.

Judgment of the city court affirmed.