EMMA L. CROCKETT, Respondent, v. ALVORD J. ALTHOUSE, Appellant.

Kansas City Court of Appeals, April 15, 1889.

1. **Promissory Note:** FAILURE OF CONSIDERATION : FRAUDULENT LEASE : RESCISSION AND RATIFICATION OF : TENANT DISPUTING TITLE : RULE AND EXCEPTION. Defendant rented lands for five years of B., who signed the lease "agent of estate, R. Long, deceased," representing he had power of attorney to do so. The land belonged to the estate of R. Long, who lived and died in Kentucky, and B. had no authority to lease except a brief letter from plaintiff's husband, the deceased's son-in-law, and then acting administrator in Kentucky, who prior to this action died. Defendants gave B. their five promissory notes, the note in suit being the first one due, B. having assigned it to plaintiff after due. Within a year plaintiff and her mother (the latter by her Kentucky guardian, she being insane) instituted proceedings in partition, ignoring the lease. Upon learning the above facts defendants abandoned the premises, renounced the whole affair and demanded their notes, and being refused began suit against B., then hopelessly insolvent, to cancel the lease and notes, and obtained a decree to that effect as to the lease and two of the five notes then remaining in B.'s hands. After the institution of the above proceedings by defendants, plaintiff, then discovert by the death of her husband, and the guardian of Long's widow, made an attempted written ratification of the lease. *Held—*

   (1) Plaintiff has no greater rights in this case than B. would have had were he the plaintiff.

   (2) The consideration of the note, the lease for five years, had failed.

   (3) That the lease was void, B. having no authority to make it, and because neither a foreign administrator nor guardian can lease land in this state.

Crockett v. Althouse.

(4) That, therefore, the lease was not the subject of ratification, and the attempted ratification was an impotent attempt to make a new contract, the guardian being non-resident.

(5) That the rule that tenant is estopped to dispute his landlord's title is subject to these exceptions: (1) Where the tenant already in possession accepts a lease, he may, for fraud, misrepresentation or mistake, dispute the title without withdrawing from the possession; and (2) where the lessee, not being the occupant, accepts a lease and enters into possession, he may, in case of fraud, misrepresentation or mistake, surrender possession and relieve himself of the estoppel.

(6) That though the lease was for five years and the rent was represented by five promissory notes of equal amounts, it does not follow that any one note represented a separate year's rent.

2. **Evidence:** PAROL AND HEARSAY, ADMISSIBILITY OF. It was error in this case to admit verbal evidence to show that the interest of the widow Long was a mere dówer interest when the pleadings and judgment in the partition proceedings showed her interest to be an undivided one-half, by reason of her having chosen a child's part, especially when the witness has no knowledge except information obtained from others.

3. **Evidence:** ADMISSIBILITY OF CONVERSATION WITH DEFENDANT AS TO THE RESULT OF THE PARTITION It is, in this case, likewise, error to admit in evidence a conversation had after the rescission, in which defendants expressed fear that the leased land would in the partition judgment be assigned to the plaintiff who would sell to parties that would disturb their possession; and the accompanying assurances of plaintiff's attorney that it would be assigned as defendants might wish.

*Appeal from the Clinton Circuit Court.*—HON. J. M. SANDUSKY, Judge.

REVERSED.

*Wm. Henry* and *Roland Hughes*, for appellants.

(1) There was no authority in Bassett to lease the land to defendants and they got none of the estate of the owners, Mrs. Long and Mrs. Crockett,

because the estate of R. Long could have no agent other than an administrator appointed in this state, who would have no power to lease except for two years upon order of court, and because the married owner of the land could make no lease for years by agent except through powers of attorney joined in by her husband, and because the insane owner could only lease by local guardian. R. S., secs. 10, 129, 5812, 5833, 5834, 5806, 5807, 5808. (2) The evidence all agreeing that the note in suit was given only as an inducement to get a five years' term carved out of the fee-simple estate of the owners of the leased land, and not for any interest Bassett might have therein, and that the acquisition of such term was the reason moving defendant to enter into the contract. There is a total lack of consideration for the note (2 Bl. Com. 443); and the want of consideration to justify the enforcement of the payment of the note is emphasized by the rule that the rescission of the contract destroys the consideration of the notes based upon it. Dan. Neg. Inst. [3 Ed] sec. 203; Thomp. Bills [Wilsons's Ed.] 66. (3) Since the note was a part of the contract of leasing, and defendants were induced to make the contract in the belief and upon the consideration that they were to get a five years' term out of the estate of Ann M. Long and Emma L. Crockett in and to the land, and not any less term, the defendants had a right to rescind the contract upon discovering the mistake and fraud; and that right goes to the whole and every part of the contract or consideration; and for the purpose of considering this issue to declare on the note is to declare on the contract. Edw. Bills and notes [2 Ed.] p. 316, side p. 333; *Wright v. McPike*, 70 Mo. 175. (4) Where a party, assuming to have authority, contracts with another, although in the name of the assumed principal, the party contracted with, on learning the facts, must have the right to repudiate the contract. *White v. Madison*, 26 N.

Y. 117; *Wheeler v. Stanley*, 50 Mo. 509; 4 C. E. Green, (19 N. J. E.) 328; *Murray v. Armstrong*, 11 Mo. 209; Brown St. Fr., sec. 124; *Brown v. Rice*, 29 Mo. 322. (5) Moreover the note in suit is tainted with positive fraud as well in the suppression of the fact of the insanity of Ann M. Long, as by the representations as to Bassett's power and authority from the owners to rent the land; for the suppression of the truth as to such insanity was as fraudulent as the suggestion of a falsehood. 2 Pars. Cont. 275, and note "h," side p. 271. (6) Fraud, illegality, want or failure of consideration, may be shown between the payee and maker of a negotiable note as freely as if the instrument were not negotiable, the burden of proof only being upon the party who impeaches such consideration. Dan. Neg. Inst., sec. 810; Dan. Neg. Inst. [3 Ed.] sec. 815; *Cass County v. Green*, 66 Mo. 551. (7) And the judgment of the circuit court is not justified in that it denies its equitable jurisdiction to grant relief against mistake; for while the rule is, that, in order to support a personal action at law for fraudulent representations, or deceit, there must be fraud as distinguished from mere mistake (*Walsh v. Morse*, 80 Mo. 568; *Dulaney v. Rogers*, 64 Mo. 201); yet in equity mistake, as well as fraud, in any representation of fact material to the contract, or a mutual mistake, as to any material matter in the contract, furnishes a sufficient ground to set it aside and declare it a nullity. *Woodruff v. Garner*, 27 Ind. 4; *McFerran v. Taylor*, 3 Cranch. 281; *Smith v. Richards*, 13 Pet. 38; *Warner v. Daniels*, 1 Woodb & M. 90; *Daniels v. Mitchel*, 1 Story, 172; *Frenzel v. Miller*, 37 Ind. 1; s. c., 10 Am. Rep. 62; 1 Story's Eq. Jur., sec. 193; *Blair v. Railroad*, 89 Mo. 383; Cooley on Torts, 498-9; *King v. Doolittle*, 1 Head (Tenn.) 77; *Griffith v. Townley*, 69 Mo. 13. (8) It is not, nor never was the law, that where one is induced by fraud, actual or constructive,

to part with value and receive property as the consideration, he cannot rescind the contract, or defend against a performance on his part without first having possession taken from him or being disturbed in the same. *McIndoe v. Mormon*, 26 Wis. 588; s. c., 7 Am. Rep. 96, and cases there cited. ( 9 ) No one has it in his power to force upon an unwilling person by ratification the obligations of a contract after he has rescinded, or elected and taken steps to rescind it; for that would be to make a new contract without the agreement of one of the contracting parties. Bigelow on Frauds, 366-7, 401, 406, 417.

*Thos. E. Turney* and *S. H. Corn*, for respondent.

( 1 ) The facts are undisputed. The defendants went into possession of plaintiff's lands by virtue of a contract in the nature of a lease; it matters not how informal the contract or the authority to the agent for making it, or whether he had any authority, or whether the landlord was sane or insane, or the contract fraudulently obtained, when the owner of the land sues for the rent, the tenant, while his possession is undisturbed, can not defend on the ground that he got no title by his contract. Taylor's Landlord and Tenant, sec. 705; *Higgins v. Turner*, 61 Mo. 250; *Grant v. White*, 42 Mo. 290, and cases cited; *Loring v. Harmon*, 84 Mo. 127 and cases cited. ( 2 ) The legal title being in the plaintiff at the time the lease was executed, the right to possession and the rents and profits was in her husband, Thomas G. Crockett. *Bledsoe v. Simms*, 53 Mo. 308. And if the instrument executed by him as "administrator, Long estate," and sent to Bassett, did not convey authority to act for the estate, an instrument executed by Bassett under the power so granted would operate upon Crockett's personal right in the lands ( *Kinney v. Mathews*, 69 Mo. 520; *Campbell v. Johnson*, 65 Mo. 440; *Endsley v. Stock*, 50 Mo. 508; R. S., sec.

2939 ); and estop him from claiming any rights inconsistent with the lease. *Huff v. Price,* 50 Mo. 228; *Kanaga v. Railroad,* 76 Mo. 214. And if necessary to give validity to the contract the court will presume ( no positive evidence appearing to the contrary) that Crockett was acting as plaintiff's agent with power to employ Bassett. *Grant v. White,* 42 Mo. 290. ( 3 ) The defendants cannot claim that the lease is void, because there is no evidence that plaintiff consented to it in the formal manner required by section 3295 of the Revised Statutes ; that statute was passed for the benefit of married women, and they alone can claim its protection. *Abernathy v. Whitehead,* 69 Mo. 28. ( 4 ) The plaintiff had a right, after the death of her husband, to affirm or disaffirm any contract made by him during their coverture, in relation to her lands ; and her affirmance of this lease made it binding upon all parties. See Tyler on Inf'cy and Coverture ( 1868 ) ch. 22, sec. 262-3, p. 396, citing 1 Bac. Ab. 302; *Jeffreys v. Gray,* Yelv. R. 78 ; Clancy on Husband and Wife, 174 ; *Higgins v. Turner,* 61 Mo. 249. ( 5 ) The court below having found from the evidence that the interest of Ann M. Long in the land was an unassigned dower, this court will not disturb that finding, that right being only a chose in action, not assignable, and no interest or estate in the land itself ; her sanity or insanity cuts no figure in the case. She could not have disturbed defendants had she been sane. 1 Wash. Real Prop. [ 3 Ed. ] p. 824, *et seq.*

ELLISON, J.—Plaintiff sues on a promissory note assigned to her by B. F. Bassett, when overdue. The consideration for the note was a lease of certain lands to defendants for five years. The lease was made by Bassett. He signed it, "B. F. Bassett, agent of estate, R. Long deceased," and similar words follow his name in the body of the lease.

Old man Long resided in Kentucky and died there, leaving a widow and plaintiff, his child. Plaintiff's husband was the administrator of the Long estate in Kentucky. Bassett assumed to have authority, by power of attorney, to lease lands in this state which belonged to the Long estate ; and defendants relying upon his representations as to his authority accepted the lease, giving their five promissory notes in consideration thereof, the one in suit being the first one due.

At the time of the execution of the lease plaintiff was a married woman and the widow was insane, having a guardian in Kentucky. Defendants entered into, and remained in, possession of the land for about one year, when they learned that their lease was invalid and had been fraudulently put upon them, and that a partition proceeding had been instituted by this plaintiff and the widow through her guardian, to partition lands of the estate, including those in the lease, but ignoring the existence of the lease. They immediately abandoned the premises, renounced the whole affair and demanded their notes. On being refused, they began suit against Bassett, who is hopelessly insolvent, to cancel the lease and notes for fraud and misrepresentation.

They were successful in this suit ; the lease was cancelled as well as two of the five notes, being all that remained at that time in Bassett's hands. After defendants abandoned the premises, threw up the lease and demanded their notes, and after they had begun the suit for cancellation, plaintiff, who had become discovert by the death of her husband, and the guardian of the widow, made an attempted written ratification of the lease.

Plaintiff has no greater right in this case than Bassett would have had was he the plaintiff. In the first place she is not a purchaser of the note. The whole theory of her case and the evidence shows she received it from Bassett as an agent, and that she was

the original beneficiary. In the second place, if she was a purchaser for value, she became so, after the maturity of the note, and it is, therefore, subject to the same defenses in her hands as it would have been in Bassett's. The consideration of the note was the lease for five years. That consideration failed, and the lease was cancelled for fraud. Conceding, for the purpose of concession only, that plaintiff is not concluded by the judgment cancelling the lease, yet it is palpably invalid aside from the judgment. It was not authorized by the law, or by plaintiff and her mother, or either of them. The only authority pretended was a note from the administrator in Kentucky, reading:

"LEXINGTON, KY., May 4, 1883.

"I hereby authorize B. F. Bassett to attend to the renting of the lands of the Long estate in Missouri, and he is my only agent.

"THOMAS G. CROCKETT,

"Adm'r, estate R. Long."

Lands in this state cannot be leased by a foreign administrator, they should be leased by an administrator in this state. R. S., sec. 129. Nor by a foreign guardian. R. S. 1879, secs. 5806, 5807, 5812, 5813, 5833, 5834. It was not authorized by plaintiff or her mother, the widow, for they could not do so under the statute cited, nor could they, aside from such statute, as one was a married woman and the other was insane.

And, as a matter of fact, neither of them attempted to make, or authorize the lease, when made.

But it is urged that the lease was afterwards properly ratified by the plaintiff after her husband's death and by the guardian of the widow. Passing by the fact that the attempted ratification was after defendants had elected to rescind and had abandoned the premises, the lease could not be ratified; it was void as a matter of law in the first place, and, therefore, not the subject of ratification. The attempted ratification

was simply an attempt to make a new contract, and an impotent atempt at that, as it still comes from the non-resident guardian of one of the owners of the land.

There is no rule of law more familiar, oftener stated or more firmly fixed, than that a tenant cannot dispute his landlord's title, and the rule applies whether the tenant was in possession before the lease or not. The rule is founded on estoppel which will prevent the tenant, after getting into possession through the landlord, or, being already in possession, taking a lease from him, from disputing the title which he has thus recognized. The rule has, however, its exceptions which are quite as well established as the rule itself. Prominent among the exceptions are these : That if the lessee did not receive possession from the lessor, being already in when he accepted a lease from him, he may, for fraud, misrepresentation or mistake, dispute the title without withdrawing from the possession. By some authorities it is held that in such case, he may dispute the title without affirmative proof of fraud. *Franklin v. Merida*, 35 Cal. 558; *Tewksburry v. Magraf*, 33 Cal. 237.

( 2 ) That if the lessee, not being the occupant of the land, accepts a lease and enters into possession under the lessor ( though he is estopped, while occupying the premises, from disputing the lessor's title ), it is nowhere disputed that he may still, in case of fraud, misrepresentation or mistake, surrender the possession and relieve himself of the estoppel. The following authorities substantiate this statement of the law: *Thayer v. Society of U. B.*, 20 Pa. St. 60; *Mays v. Dwight*, 82 Pa. St. 462; *Baskin v. Seechrist*, 6 Pa. St. 154; *Gallaher v. Bennett*, 38 Texas, 291; *Jackson v. Spear*, 7 Wend. 400; *Longfellow v. Longfellow*, 61 Maine, 590; *Moshier v. Reding*, 12 Maine, 478; *Heath v. Williams*, 25 Maine, 209, 218; *Tilghman v. Little*, 13 Ill. 239; *Lowe v. Emerson*, 48

Ill. 160, 164; *Brown v. Keller*, 32 Ill. 151, 155; *Hodges v. Shields*, 18 B. Monroe, 828; *Russell v. Erwin*, 38 Ala. 44, 50; *Reed v. Shepley*, 6 Vt. 602; *Byrne v. Beeson*, 1 Douglas, 179; *Towne v. Butterfield*, 97 Mass. 105; 1 Wash. Real Prop. 557, 562, 565.

But, aside from this, if plaintiff and Ann M. Long are to be regarded as the lessors, estoppel cannot be invoked in their behalf. The fundamental rule of estoppel is that it must be mutual; if one party is not bound, neither is. So, as when this lease was made plaintiff was a married woman and Mrs. Long was insane, they were not bound by the estoppel, therefore defendants were not. Wood's L. & T. 365; Tyler's I. & C. 105; *Clark v. Goddard*, 39 Ala. 164; *Lackman v. Wood*, 25 Cal. 147; *Brown v. McCune*, 5 Sanf. 224; *Campbell v. Laclede Gas Co.*, 84 Mo. 352; *Burk v. Adams*, 80 Mo. 504; *McBeath v. Trabere*, 69 Mo. 642; *City of Marshall v. Anderson*, 78 Mo. 85.

But it may be suggested that so long as the tenant is not evicted from the premises, that he should be held to the terms of the lease, which he has accepted. Whatever there may be in this as a general rule, and conceding for present purposes, that it would apply in case of fraud, it cannot be of universal application. The relation of landlord and tenant is one of contract and the estoppel is everywhere said to rest on contract and I can perceive of no reason why a contract between landlord and tenant may not be rescinded for fraud and misrepresentation as well as any other contract. Wood's L. and T. 174. The principal requisite in such rescission would be, as in other cases, that the party rescinding place the other party *in statu quo*, that is, deliver back the possession of the premises. If such was not the law, the most harmful and unjust results would follow. A lessee might by fraudulent means be

induced to accept a lease and possession for ten years; he might presently discover the fraud and find that he was liable to the real owner as a trespasser, thus being under a double liability. Not only so, but liable to be evicted at any time the owner might elect; thus not only becoming liable in damages but his business plans disconcerted and his calculations and expectations rendered uncertain. That one, by the fraud or .misrepresentation of another, could be placed helplessly in a position where the very object of his lease would fail, where his business would become demoralized, and where he would be liable for rent to the lessor, and in trespass to the owner, is a proposition that at once shocks the common sense. It is apparent that a lessee, finding himself in such position, would have a right to extricate himself by surrendering to the lessor the possession he has received from him.

The nature of the estoppel and the reason upon which it is founded is the same between landlord and tenant as between vendor and vendee, where the vendee, under a contract of purchase, receives possession from the vendor; and the following cases of the latter class fully sustain the position which we have taken in this case: *Harvey v. Morris*, 63 Mo. 475; *Matheny v. Mason*, 73 Mo. 677, 679; *Pershing v. Canfield*, 70 Mo. 140; *Wheeler v. Standley*, 50 Mo. 509.

The court admitted verbal evidence for the purpose of showing that the interest of Ann M. Long in the land was only that of dower. This in face of the fact that by the partition proceedings begun by her and this plaintiff, she is declared to be the owner in fee of the undivided one-half of the premises, by reason of having chosen a child's part, and the judgment therein so declaring and setting apart her share. But in addition to this the testimony was given by the attorney in the partition suit who knew nothing about the matter whatever, except by information obtained by the letters

from plaintiff's lawyers in Kentucky, and these letters not addressed to the witness but to Bassett, and thence by Bassett communicated to the witness, whether by showing him the letters, or by communicating their contents, does not appear. Such testimony should not have been admitted.

The same witness was permitted to state, over defendant's objection, that: " In one of our conversations, Mr. Althouse seemed to be uneasy for fear that the land would be assigned to Mrs. Crockett, and that she would sell to parties, who would disturb their possession. I told him that if that was what he feared I was attorney for both parties in the partition suit, and that I would have the land described in the lease assigned to Mrs. Long. who being insane could not sell, or would have it assigned to either that he wished. Mr. Althouse did not say which he wanted and I did what I thought would perfect his lease, and had the land described in the lease assigned to Mrs. Emma L. Crockett."

This, besides being after the rescission had taken place, was wholly incompetent. It was the mere talk of an attorney in the cause as to what he would do in the future, when the court came to render judgment concerning the lands. It is but fair to presume, that defendants might entertain some fears that this promise might not, or could not, be carried out. The attorney might be discharged or might change his mind, or, if he did not, that the court might wield its legitimate prerogative by exercising its own judgment, especially in a matter which involved the property of an insane person. The court might have taken the view that it would be better to have the property sold and the proceeds divided, and thus third parties would have become owners of the land, and certainly not bound by the so-called lease.

If it be suggested that, as the defendants occupied the premises for about one year before they discovered the fraud and gave up possession, they should be held to pay this note as representing one year's rent, it may be said that from the fact that the lease was for five years, and that the rent to be paid was represented by five promissory notes, of equal amounts, it does not follow by any means that any one note represented a separate year's rent. The lease was for five years at the rate of two hundred and sixty dollars per year it is true, but it needs no illustration to show that it does not follow, because a man is willing to pay five times two hundred and sixty dollars for five years he will be willing to pay two hundred and sixty dollars for one year. It may be he would not take the premises for one year at any price; that if he could not get it for a term of years he would not take it at all, or it may be as some of the evidence tended to show was the fact in this case, the first year would be spent in preparing the premises for use the remaining four.

For the reasons foregoing, the other judges concurring, the judgment will be reversed.